JENNIFER HARRIS, a Minor, by Lynn Harris, her Mother and Best Friend, Plaintiff, v. MERCY HOSPITAL *et al.*, Defendants (Ann Herbert, Contemnor-Appellant).

First District (5th Division)   No. 1—90—1404

Opinion filed June 26, 1992.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky, of counsel), for appellant.

Bollinger, Ruberry & Garvey, of Chicago (Stuart A. Ringel and Sheila M. Adan, of counsel), for defendant Ricardo V. Enriquez.

Peterson & Ross, of Chicago (William K. McVisk and Jeannine M. Glavas, of counsel), for other defendants.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Jennifer Harris was ordered by the trial court to submit to a blood test pursuant to Illinois Supreme Court Rule 215. (87 Ill. 2d R. 215.) Plaintiff's counsel Ann Herbert refused to submit the plaintiff to the blood test and counsel was therefore held in contempt of court. It is from this contempt order that counsel appeals.

Lynn Harris as mother and next friend of the minor plaintiff, Jennifer Harris, brought this lawsuit alleging that Dr. Ricardo V. Enriquez, Mercy Hospital and other physicians were negligent in their care and treatment prior to and at the time of Jennifer's birth on February 20, 1978. Plaintiff alleges that as a result of the defendants' negligence, Jennifer suffers permanent brain damage.

As part of her medical care, Jennifer was examined by Dr. Celia Kaye, a specialist in the field of genetics. During a discovery deposition, Dr. Kaye testified that Jennifer may suffer from Angelman Syndrome, which is also known as the "Happy Puppet Syndrome." Angelman Syndrome is thought to involve a specific chromosomal abnormality.

In an effort to establish that Jennifer's condition is the result of a genetic disorder, rather than medical malpractice, counsel for Dr. Enriquez presented a motion to compel the plaintiff to submit to a chromosomal blood test. The trial court ordered the defendant to submit an affidavit establishing "good cause" under Supreme Court Rule 215 for the blood test. Defendant submitted a memorandum in support of his motion which included the affidavit of Dr. Jaime Frias. Dr. Frias, a board-certified pediatrician at the University of Nebraska Medical Center, opined that based on the materials he had reviewed, including photographs of the minor plaintiff, it was his opinion to a reasonable degree of certainty that Jennifer Harris suffered from Angelman Syndrome. Dr. Frias stated that a chromosomal and genetic analysis of a blood sample obtained from the plaintiff might confirm his diagnosis. Dr. Frias explained that technological advances might permit identification of genetic defects which had not been observable or detectable in 1981 when Jennifer's genes were first analyzed. Finally, Dr. Frias opined that the suggested blood test posed only an "extremely remote risk of harm" to Jennifer.

Plaintiff objected to "any examination which involves the use of invasive techniques such as the drawing of blood." Plaintiff pointed out that the request had failed to establish "good cause" for requiring the minor to submit to a blood test, and that submission to a blood

test would subject the minor plaintiff to risk of physical injury, trauma, serious complications from contamination or infection, and risk of AIDS. Plaintiff also argued that there is no medical evidence that Jennifer's mental and physical defects are attributable to a genetic defect and there was no blood test that would "either rule in or rule out" the presence of any genetic abnormality.

On February 7, 1990, the trial court ordered Jennifer to submit to a blood test, for the purpose of chromosomal testing, within 28 days at a time and place to be agreed upon by the parties. Plaintiff did not comply with this order. On April 11, 1990, counsel for Dr. Enriquez presented a motion for sanctions against plaintiff for failure to comply with the court's February 7, 1990, order. At the hearing on the motion, counsel for plaintiff advised the court that she would not comply with the court's February 7, 1990, order. Accordingly, the court entered an order holding plaintiff's counsel, Ann Herbert, in civil contempt of court and imposed a $10 monetary fine.

On appeal, we address the issue of whether the trial court abused its discretion when it ordered that plaintiff be submitted for a blood test pursuant to Supreme Court Rule 215.

■ Illinois Supreme Court Rule 215 provides in pertinent part:

"In any action in which the physical or mental condition of a party *** is in controversy, the court, upon notice and for good cause shown on motion within a reasonable time before trial, may order the party to submit to a physical or mental examination by a physician suggested by the party requesting the examination ***." (134 Ill. 2d R. 215(a).)

Pursuant to Rule 215, the court in which a personal injuries action is pending has the discretion to order the plaintiff to submit to a physical examination. (*Sarka v. Rush-Presbyterian-St. Luke's Medical Center* (1990), 207 Ill. App. 3d 587, 566 N.E.2d 301.) The rationale behind this rule is that when one seeks to recover damages on the basis of his physical injuries he puts his physical condition at issue. (*People ex rel. Noren v. Dempsey* (1957), 10 Ill. 2d 288, 139 N.E.2d 780.) If the trial court orders an examination pursuant to Rule 215, its ruling will be reversed only upon a showing of abuse of discretion. *In re Conservatorship of the Estate of Stevenson* (1970), 44 Ill. 2d 525, 256 N.E.2d 766.

Recently, in *Sarka* (207 Ill. App. 3d 587, 566 N.E.2d 301), the court considered the issue of whether in a medical malpractice action, a court has discretion to order a physical examination which may injure the plaintiff. The plaintiff in *Sarka* opposed defendant's request for a computed axial tomography (CT) scan under sedation, arguing

that chloral hydrate, the agent used for sedation, posed a known risk of harm. Defendant's expert testified that due to recent technological developments, if a CT scan with sedation were given, he could tell definitively whether or not plaintiff suffered from a genetic disorder. In addition, defendant's expert testified that the risk of life-threatening complications from the chloral hydrate were negligible. While plaintiff's expert explained the possible dangers associated with the use of chloral hydrate, he noted that it is impossible to determine in advance whether plaintiff would experience an adverse reaction to the sedative. The court affirmed the trial court's order compelling plaintiff to submit to the CT can under sedation, and in reaching its decision, stated that when a plaintiff maintains that a Rule 215 examination presents the possibility of danger, he has the burden of showing that the proposed examination is *prima facie* dangerous. If plaintiff meets his burden, the burden then shifts to the defendant to show the safety of the proposed examination.

Even more recently, in *Stasiak v. Illinois Valley Community Hospital* (1992), 226 Ill. App. 3d 1075, 590 N.E.2d 974, the trial court ordered the plaintiff to submit to magnetic resonance imaging (MRI) under sedation. The appellate court reversed, explaining that when the plaintiff objects to a Rule 215 motion based on the health risks, he must support this objection with competent medical testimony or evidence. The burden then shifts to the defendant to establish by competent medical testimony or evidence that the requested examination has a clear probative value to the litigation's ultimate issue and there is a minimal level of risk. The court noted that while in *Sarka*, the CT scan under sedation would definitively resolve the issue of whether the minor's condition was due to a genetic disorder, here, there was no evidence that the MRI results would prove the cause of plaintiff's condition. Accordingly, applying the balancing test, the probative value of the proposed examination was outweighed by the level of risk to the plaintiff.

The record in the instant case reveals that in 1981, plaintiff's blood was tested in order to determine whether she had any chromosomal defect. That test, however, failed to provide any evidence of a genetic or chromosomal abnormality in plaintiff. Defendant's expert testified that technological advances might now permit identification of genetic defects that were not detectable in 1981. Nonetheless, defendant's expert concedes that even now, the blood test has only a 50% likelihood of indicating that Jennifer has the genetic defect in question.

■ Notwithstanding the fact that submitting Jennifer to the blood test may not conclusively determine whether she has a genetic disorder, we conclude that the trial court did not abuse its discretion in ordering Jennifer to submit to the blood test since the probative value of this evidence is outweighed by the potential risk to Jennifer. Blood tests are routine procedures in our everyday life. (*Breithaupt v. Abram* (1957), 352 U.S. 432, 1 L. Ed. 2d 448, 77 S. Ct. 408.) It is well established that the trial court has broad discretion under Supreme Court Rule 215 to order litigants in a paternity action to submit to blood tests. (*People ex rel. Coleman v. Ely* (1979), 71 Ill. App. 3d 701, 390 N.E.2d 140.) Furthermore, blood tests are routinely required when applying for marriage licenses, life insurance, entrance to college and to determine fitness for military service. The potential risk resulting from a blood test is certainly less than that of a CT scan or MRI performed under sedation, and plaintiff has presented no competent evidence that the drawing of blood presents an unreasonable risk to Jennifer. While defendant's expert testified that any potential risk to plaintiff as a result of the blood test is minimal, plaintiff has provided nothing more than the unsupported, conclusory statements of plaintiff's counsel regarding the potential dangers. We therefore conclude that since the litigant has placed her physical condition at issue, the trial court properly exercised its discretion when it ordered plaintiff to undergo a blood test that may determine the cause of her injuries.

We note, however, that the trial court's order failed to specify the names of the persons performing the blood test and performing the genetic testing. Moreover, the order failed to specify the safety measures to be employed in taking the blood sample and, most significantly, the order entered by the trial court failed to limit the testing which is to be performed on Jennifer to simply testing for one specific defect, Angelman's Syndrome. A proper order pursuant to Rule 215 requires such specificity (*Sarka*, 207 Ill. App. 3d at 599), and we therefore remand so that the trial court can make the order more specific.

■ Accordingly, based on the reasons set forth above, we find that the trial court did not abuse its discretion when it granted defendant's motion to compel Jennifer to submit to a blood test. However, because the trial court's order does not specifically state the names of the persons conducting the tests, the scope of the genetic testing and the safety precautions to be employed in taking the test, we remand this matter for further proceedings so that the order can be made more specific. Finally, we vacate the contempt order and the

$10 fine assessed against plaintiff's counsel. The trial court entered the contempt order at Herbert's request, and it is well settled that a contempt order was the proper procedure to follow in order to test the validity of the trial court's discovery order. (*Dunkin v. Silver Cross Hospital* (1991), 215 Ill. App. 3d 65, 573 N.E.2d 848.) Plaintiff acted in good faith and did not hold the court in disdain or subject it to scorn.

Affirmed in part; vacated in part and remanded.

LORENZ and MURRAY, JJ., concur.