April 23, 1999

 No. 2--98--0431 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

LAURIE L. WARRENDER,

Plaintiff-Appellant,

v.

CHRISTINE CAMIL MILLSOP,

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of Lake County.

No.  96--L--240

Honorable

Terrence J. Brady,

Judge, Presiding.

JUSTICE COLWELL delivered the opinion of the court:

Plaintiff, Laurie L. Warrender, brought this action against defendant, Christine Camil Millsop, for injuries suffered in an automobile accident.  A jury trial was held on the issue of damages only.  Despite plaintiff’s claim of over $15,000 in damages, the jury awarded her $4,988.  Plaintiff now appeals, contending (1) that defendant failed to timely disclose her opinion witness, Dr. Elizabeth Kessler, and that the trial court abused its discretion in allowing Dr. Kessler to testify; (2) that the trial court similarly erred in allowing defendant to introduce an untimely produced surveillance video of plaintiff; and (3) that the trial court erred in refusing to strike part of Dr. Kessler’s testimony.  
We agree with plaintiff’s first two arguments and remand the cause for a new trial.

On April 15, 1994, defendant̓s automobile rear-ended plaintiff̓s automobile at a stop light in Lake County.  Plaintiff filed suit against defendant on April 3, 1996, seeking damages for neck, shoulder, and lower back injuries that plaintiff allegedly suffered as a result of the accident.  Plaintiff received care from several medical specialists subsequent to the accident and continued to receive medical care through the date of trial.

In May 1996, the parties served interrogatories on each other pursuant to Supreme Court Rules 213(f) and (g) (177 Ill. 2d Rs. 213(f), (g)) to obtain the names of potential witnesses and opinion witnesses.  Defendant’s answers, sent to plaintiff in July 1996, stated, "Defendant[] [has] retained no opinion witness at this time[;] however, the right to do so is reserved."  Plaintiff answered in August 1996 and named Dr. Burt Schell and Dr. R.E. Schultz as her opinion witnesses.  Both doctors had treated plaintiff since the car accident.  On August 21, 1996, the trial court established the following litigation schedule: plaintiff was to identify her expert witnesses by November 10, 1996; defendant was to identify her expert witnesses by December 10, 1996; discovery was to be completed by January 10, 1997; and a jury trial was to be held on February 10, 1997.

In October 1996, defendant̓s attorneys, Theodore Poehlmann and his associate, Stephen Tasch (collectively, Poehlmann), received certain medical records pursuant to subpoena.  Included were the medical records of Dr. Thomas Burnstine, who treated plaintiff several times in 1995.  On November 7, 1996, plaintiff̓s attorney, Robert Long, sent a letter to Poehlmann supplementing plaintiff’s interrogatory answers.  Long’s letter stated in pertinent part, "Dr. Thomas Burnstine, a treating neurologist, is expected to testify regarding the nature, extent and duration of Plaintiff’s injury, in accordance with the report and records that were produced pursuant to subpoena and all reasonable inferences and conclusions flowing therefrom."

On January 14, 1997, plaintiff moved to reschedule the trial.  Long indicated that he and Poehlmann were discussing submitting the case to alternative dispute resolution and that plaintiff’s medical treatment continued.  The trial court granted the motion and reset the trial for August 4, 1997.

Plaintiff saw Dr. Jennifer Capezio, a rheumatologist, for the first time on February 17, 1997.  In response to defendant’s request for supplemental interrogatory answers, Long sent Dr. Capezio’s February medical notes to Poehlmann on May 22.  Although one set of Dr. Capezio’s February notes was illegible, Long included a second set of legible notes that he had obtained from Dr. Capezio.  Long’s accompanying cover letter stated that the diagnosis of plaintiff’s condition was unclear and that plaintiff’s treatment continued.  In a letter dated May 30, Poehlmann thanked Long for Dr. Capezio’s medical notes and suggested submitting the case to binding arbitration.

On July 1, 1997, Long filed a joint motion to reschedule trial and a motion to set a pretrial date.  The trial court subsequently set a July 18, 1997, pretrial date and a September 29, 1997, trial date.  Plaintiff’s pretrial memorandum, filed on July 18, identified Dr. Capezio as plaintiff’s "primary physician" and as a person expected to testify at trial.  The pretrial memorandum included Dr. Capezio’s diagnosis of plaintiff’s condition ("chronic cervical myofascial syndrome, primarily involving the neck and shoulder") and detailed Dr. Capezio’s likely testimony.  The memorandum further stated that Dr. Burnstine and Dr. Schell "reached the same basic opinions" as Dr. Capezio did and that Dr. Schultz’s diagnosis was "fundamentally the same as that reached by Dr. Capezio."  The memorandum also contained the thrust of Dr. Schultz’s anticipated testimony.

Late in July 1997, Poehlmann moved to reschedule the trial.  The trial court granted defendant’s motion on August 12 and gave the case a final trial date of October 27, 1997.

Poehlmann sent Long supplemental interrogatory answers on July 30, 1997.  The answers stated in relevant part, "The Defendant discloses that Dr. Ronald Pawl will testify to his opinions regarding his examination of the Plaintiff and that which was subsequently incorporated into his record; investigation continues."  Long did not believe that Dr. Pawl had ever examined plaintiff.  On July 31, Poehlmann sought leave to depose Dr. Capezio.  The court granted his request on August 7.

Dr. Burnstine examined plaintiff again on August 3, 1997.  In a letter dated August 14, Long informed Poehlmann of plaintiff’s visit to Dr. Burnstine and reminded Poehlmann that Dr. Burnstine would testify at trial.  Long referred to Dr. Burnstine as plaintiff’s "most important witness."  Long also wrote that he had been unable to speak with Dr. Burnstine directly and therefore could not "be more revealing of [Dr. Burnstine’s] opinion," but that the doctor would testify as "previously indicated."

Poehlmann contacted Dr. Kessler, a neurologist, on August 19, 1997.  Poehlmann sent Dr. Kessler the complaint at law, some medical records, and a letter asking her if she would testify as defendant’s opinion witness.  Although Dr. Kessler had worked for Poehlmann in the past, this was the first time that Poehlmann contacted her relating to the instant matter.  Dr. Kessler agreed to act as defendant’s expert, and, on September 8, Poehlmann sent her all of the
 medical records in his possession.

On October 7, plaintiff visited Dr. Capezio, who made a typewritten report of her findings and diagnosis
. 
 Long gave Poehlmann that report on October 9
.  That same day, Poehlmann took Dr. Burnstine̓s discovery deposition.  Poehlmann deposed Dr. Capezio on October 15.

Poehlmann telephoned Long on October 14 to inform Long of his intention to file another motion to reschedule trial.  Without revealing that he had retained Dr. Kessler as defendant’s opinion witness
, Poehlmann
 asked Long if he would agree to filing the motion jointly.  Long agreed to the joint motion, which Poehlmann filed on the morning of October 16.  That same morning, the trial court denied the motion, and the trial thus remained scheduled for October 27.

Later that afternoon (October 16), Poehlmann faxed Long a six-

page report written by Dr. Kessler
.  The report, dated October 9, 1997, reviewed the medical visits that plaintiff had made since the April 1994 automobile accident.  Dr. Kessler concluded
 in her report that there was no physical explanation for plaintiff’s complaints and that there were "secondary gain issues contributing to her symptoms."  According to Dr. Kessler, plaintiff was feigning her injuries for financial gain.

Long first saw the fax on October 17.  He immediately phoned Poehlmann 
and told him that he would object to Dr. Kessler’s testimony.  On October 21, Long filed a motion 
in
 
limine
 requesting that defendant be barred from calling Dr. Kessler as an opinion witness.  Plaintiff asserted that, by not naming Dr. Kessler as her expert witness until October 16, defendant failed to timely disclose her expert witness pursuant to Supreme Court Rule 213(g) (177 Ill. 2d R. 213(g)).  The trial court initially agreed with plaintiff and barred Dr. Kessler from testifying.

On October 22 and 23, Dr. Capezio and Dr. Burnstine
 gave their videotaped evidence depositions.  Long asserts that he spent "thousands of dollars" preparing for, videotaping, and taking the depositions.  Due to the trial court’s ruling barring Dr. Kessler’s testimony, neither Dr. Capezio nor Dr. Burnstine 
attempted to refute the opinions that Dr. Kessler
 expressed in her
 report.

Though the trial was scheduled for October 27, it did not begin until November 3.  On October 27, defendant filed a motion to reconsider the decision to bar Dr. Kessler from testifying.  Poehlmann asserted
 that he did not become aware of the opinions of Dr. Burnstine
 and Dr. Capezio until he deposed them on October 9 and October 15, respectively.  
Poehlmann argued
 that it would be "fundamentally unfair" to allow
 the testimony of Dr. Burnstine
 and Dr. Capezio
 but exclude that of Dr. Kessler.
  On October 27 the trial court granted defendant’s motion to reconsider, thereby permitting Dr. Kessler to testify.  Because Dr. Kessler would have to be deposed, the trial court offered plaintiff the opportunity to continue the trial to allow Long more time to prepare for Dr. Kessler’s deposition.  Plaintiff declined the offer and asked the court to reconsider its ruling, but the court reaffirmed that Dr. Kessler could testify.

Late in the afternoon of October 27, Poehlmann informed Long via facsimile that Dr. Kessler would give her discovery deposition at 2 p.m. on October 29 and that Dr. Kessler’s evidence deposition would follow immediately thereafter.  Late in the afternoon the following day, Long faxed Poehlmann a letter requesting a substantial amount of information about Dr. Kessler.  Poehlmann responded immediately to Long’s request, referring Long to Dr. Kessler’s report where appropriate and otherwise objecting to Long’s requests as broad and overly burdensome.

Over Long’s objections, Dr. Kessler’s discovery and evidence depositions were taken on October 29.  Dr. Kessler’s testimony was consistent with her report--that plaintiff’s complaints of pain were the result of a "secondary gain."  Dr. Kessler based her opinion on plaintiff’s medical records, on the deposition transcripts of plaintiff, Dr. Burnstine, and Dr. Capezio, and on a surveillance video of plaintiff taken late in August 1997.  The surveillance video depicted plaintiff conversing with friends and performing other daily activities.  Poehlmann, who did not inform Long of the video’s existence until October 28, turned over a copy of the video to Long following Dr. Kessler’s evidence deposition.

The jury trial began on November 3.  The jury saw the videotaped depositions of Dr. Capezio and Dr. Burnstine and heard Dr. Kessler’s evidence deposition.  The trial court struck the portions of Dr. Kessler’s deposition where she referred to the surveillance video but allowed the jury to view the video itself.  The jury was instructed to determine only the amount of the damages proximately caused by defendant.  Although plaintiff submitted medical specials exceeding $15,000, the jury awarded her $4,988.

Plaintiff’s first contention on appeal is that the trial court erred in allowing Dr. Kessler to testify.  Plaintiff’s argument requires that we engage in a two-part analysis.  We must determine (a) whether defendant complied with Rule 213(g) (177 Ill. 2d R. 213(g)) in identifying Dr. Kessler, and, if not, (b) whether a sanction was appropriate.

The supreme court rules on discovery are mandatory rules of procedure that courts and counsel must follow.  
Department of Transportation v. Crull
, 294 Ill. App. 3d 531, 537 (1998).  Illinois Supreme Court Rule 213(g) (166 Ill. 2d R. 213(g), now 177 Ill. 2d R. 213(g)) became effective January 1, 1996, and replaced Rule 220 (134 Ill. 2d R. 220).  
Iser v. Copely Memorial Hospital
, 288 Ill. App. 3d 408, 410 (1997).  Rule 213(g) explicitly states that, upon written interrogatory, a party must disclose the subject matter, conclusions, opinions, qualifications, and all reports of a witness who will offer opinion testimony.  177 Ill. 2d R. 213(g); 
Crull
, 294 Ill. App. 3d at 536
.  Furthermore, Rule 213(i) imposes on a party the continuing duty to supplement discovery responses "whenever new or additional information subsequently becomes known to that party."  177 Ill. 2d R. 213(i).  The committee comments to Rule 213(g) provide in pertinent part:

"It is the Committee’s belief that 
in order to avoid surprise
, the subject matter of all opinions must be disclosed pursuant to this rule and Supreme Court Rule 218, and that no new or additional opinions will be allowed 
unless the interests of justice require otherwise
." (Emphasis added.)  177 Ill. 2d R. 213(g), Committee Comments, at xxx-xxxi.

Rule 218(c) states in pertinent part:

"All dates set for the disclosure of opinion witnesses and the completion of discovery shall be chosen to ensure that discovery will be completed 
not later than 60 days
 before the date on which the trial court reasonably anticipates the trial will commence."  (Emphasis added.) 166 Ill. 2d R. 218(c).

Thus, Rules 213(g), 213(i) and 218(c) work together to ensure that, upon written interrogatory and no later than 60 days prior to the anticipated date of trial, parties disclose the subject matter, conclusions, opinions, qualifications, and reports of their opinion witnesses.  177 Ill. 2d Rs. 213(g), (i); 166 Ill. 2d R. 218(c). 

In this case, plaintiff asserts that, with the trial scheduled for October 27, the trial court should have barred Dr. Kessler from testifying, since Poehlmann did not name Dr. Kessler as defendant’s opinion witness until October 16.  Poehlmann does not deny that he first disclosed Dr. Kessler 11 days prior to trial.  Rather, Poehlmann maintains that plaintiff waived her Rule 213 objection as to Dr. Kessler.  Poehlmann advances two arguments in support of this contention.

First, Poehlmann maintains that Long himself failed to comply with the discovery requirements.  According to Poehlmann, Long failed to timely disclose the subject matter, conclusions, opinions, qualifications, and reports of Dr. Capezio and Dr. Burnstine.  Poehlmann urges us to recognize an anticipated trial date of February 10, 1997, or August 4, 1997; however, we find that the trial court reasonably anticipated that the trial would commence on October 27, 1997, which was the date the trial court on August 12 set as the 
final
 trial date.  The parties therefore had a duty to disclose opinion witnesses by August 28, 1997.  See 177 Ill. 2d R. 213(g); 166 Ill. 2d R. 218(c)(parties must identify opinion witnesses no later than 60 days prior to the reasonably anticipated trial date).

We disagree with Poehlmann’s contention that Long failed to timely identify Dr. Burnstine and Dr. Capezio.  Poehlmann obtained medical records from Dr. Burnstine in October 1996.  Long supplemented his Rule 213(g) answers in November 1996 with a letter to Poehlmann in which he identified Dr. Burnstine as a treating neurologist and as an opinion witness and also informed Poehlmann of the subject matter of Dr. Burnstine’s anticipated testimony.  Furthermore, in plaintiff’s July 18, 1997, pretrial memorandum, Long revealed the treatment that Dr. Burnstine provided plaintiff and the opinions that Dr. Burnstine reached.  Finally, Long’s August 14, 1997, letter to Poehlmann reiterated that plaintiff would call Dr. Burnstine as an opinion witness and that Dr. Burnstine would testify as "previously indicated."  With these communications, Long satisfied the discovery requirements of Rule 213(g).

We likewise conclude that plaintiff timely disclosed Dr. Capezio.  In October 1996, Poehlmann received Dr. Capezio’s medical notes pursuant to subpoena.  On May 22, 1997, Long sent Poehlmann the legible medical records from plaintiff’s February 1997 visit to Dr. Capezio.  Furthermore, plaintiff’s July 1997 pretrial memorandum informed Poehlmann of Dr. Capezio’s diagnosis, opinions, and conclusions and fully advised Poehlmann of Dr. Capezio’s anticipated testimony.  Certainly plaintiff timely disclosed Dr. Capezio under Rule 213(g).

Second, defendant insists that plaintiff, by agreeing to proceed to trial despite the trial court̓s offer of a continuance, waived her Rule 213 objection. 
 We disagree.  The practice of continuing trial for parties to depose an undisclosed opinion witness should not be, and is not, looked upon favorably. See 
Phelps v. O̓Malley
, 159 Ill. App. 3d 214, 226 (1987)(appellate court did not approve of
 trial court’s adjournment of trial so that defendant could depose plaintiff’s undisclosed expert
).  Indeed, "[s]uch delays disserve the parties, the courts and the legal profession."  
Phelps
, 159 Ill. App. 3d at 226.

According to defendant’s argument, plaintiff was to choose between (a) proceeding to trial and waiving her Rule 213 objection and (b) continuing trial so that Long could adequately prepare for Dr. Kessler’s deposition.  In other words, plaintiff would either waive her Rule 213 objection or postpone her day in court, when the trial date had already
 been rescheduled 
four
 times
.  We find it fundamentally unfair to force plaintiff to make such a choice, especially where, as here, plaintiff’s dilemma arose out of defendant’s noncompliance with the discovery rules
.  Furthermore, plaintiff invested a large amount of money preparing for, videotaping, and taking the evidence depositions of Dr. Burnstine and Dr. Capezio.  Those depositions would have had to be retaken if plaintiff opted to continue trial again, and, unlike the situation in 
Uhrhan v. Union Pacific R.R. Co.
, 155 Ill. 2d 537, 545 (1993), t
here was no offer from the trial court to impose the costs of redeposing plaintiff’s experts on defendant.

We therefore hold that Poehlmann violated Rules 213 and 218 and that plaintiff did not waive her Rule 213 objections.  See
 
Adami v. Belmonte
, 302 Ill. App. 3d 17, 22-24 (1998) (where plaintiff identified opinion witness two weeks prior to trial, plaintiff violated Supreme Court Rules 213 and 218, and trial court properly barred testimony of opinion witness).  

We next must determine whether sanctions were appropriate. Supreme Court Rule 219 (166 Ill. 2d R. 219) authorizes a court to impose sanctions upon a party who fails to comply with discovery rules.  One such sanction involves barring a witness from testifying.  
Ashpole v. Brunswick Bowling and Billards Corp.
, 297 Ill. App. 3d 725, 727 (1998).
  Where a party fails to comply with the provisions of Rule 213, a court should not hesitate sanctioning the party, as Rule 213 demands strict compliance.  Indeed, as was stated in 
Crull
, 294 Ill. App. 3d at 538-39
:

"Rule 213 establishes more exacting standards regarding disclosure than did Supreme Court Rule 220 *** which formerly governed expert witnesses.  Trial courts should be more reluctant under Rule 213 than they were under former Rule 220 (1) to permit the parties to deviate from the strict disclosure requirements, or (2) not to impose severe sanctions when such deviations occur."

A court must consider the following factors in determining whether the exclusion of a witness is a proper sanction for nondisclosure: (1) the surprise to the adverse party; (2) the prejudicial effect of the testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timely objection to the testimony; and (6) the good faith of the party calling the witness. 
 The decision whether or not to impose sanctions is within the sound discretion of the trial court, and that decision will not be reversed absent an abuse of discretion.  
Ashpole
, 297 Ill. App. 3d at 727.

All of these factors weighed in favor of barring Dr. Kessler’s testimony.  First, Long was clearly surprised by the disclosure of Dr. Kessler.  Despite being served with interrogatories and despite his duty to supplement those interrogatories, Poehlmann did not identify Dr. Kessler until 11 days prior to trial.

Regarding the second and third factors, prejudice and the nature of the testimony, the content of Dr. Kessler’s testimony
 highly prejudiced plaintiff.  
Dr. Kessler testified that plaintiff essentially was faking her injuries to secure a large financial award, and p
laintiff̓s experts were unable to refute Dr. Kessler̓s testimony.
  The jury must have believed Dr. Kessler, since it awarded plaintiff one-third of plaintiff’s claimed damages.

The fourth factor is plaintiff’s diligence.  Long sent Poehlmann Rule 213 interrogatories in May 1996, less than two months after the suit was filed, and Poehlmann
 had a duty to seasonably supplement those answers pursuant to Rule 213(i) (177 Ill. 2d R. 213(i)).  The only way for Long to have learned of Poehlmann’s retention of Dr. Kessler was through Poehlmann.  However, it was not until 11 days prior to trial that Poehlmann identified her.  
We find that plaintiff was diligent in seeking the identity of Dr. Kessler.

Poehlmann asserts that Long̓s addition of Dr. Burnstine and Dr. Capezio as plaintiff̓s opinion witnesses prevented Poehlmann from disclosing an opinion witness prior to August 28, 1997.  According to Poehlmann, Long
 originally retained an orthopedic surgeon (Dr. Schell
) and a chiropractor (Dr. Schultz
) as plaintiff’s opinion witnesses, and Poehlmann named Dr. Pawl as defendant’s expert because Dr. Pawl was capable of refuting the opinions of those doctors.  However, asserts Poehlmann, by the time Long disclosed a neurologist
 (Dr. Burnstine)
 and a rheumatologist (Dr. Capezio) 
as opinion witnesses, Poehlmann could not timely retain an expert who could adequately refute the testimony of plaintiff’s experts. 
 We find defendant̓s argument unpersuasive.  Long identified Dr. Burnstine and Dr. Capezio as opinion witnesses on November 7, 1996, and July 18, 1997 (at the very latest), respectively, yet Poehlmann waited until August 19, 1997, to 
contact
 Dr. Kessler, let alone disclose her to Long.  To the extent that Poehlmann maintains that he could not timely disclose a neurologist to refute the testimony of plaintiff’s neurologist, we note the following:  Long disclosed Dr. Burnstine (a neurologist) in November 1996; Poehlmann had 10 months to retain a neurologist; Dr. Kessler is a neurologist; and Dr. Kessler had worked for Poehlmann on several prior occasions.  Certainly the timing of Long’s disclosures did not impede Poehlmann’s ability to retain and disclose a qualified expert by August 28.

The fifth factor is the timeliness of plaintiff’s objection.  Long promptly objected to the prospect of Dr. Kessler's testifying.  He called Poehlmann immediately on October 17 after seeing the facsimile containing Dr. Kessler’s report and filed a motion 
in
 
limine
 on October 21.  Furthermore, Long objected prior to Dr. Kessler’s discovery and evidence depositions.

The sixth factor involves whether Poehlmann acted in good faith in identifying Dr. Kessler.  On August 12, pursuant to defendant’s motion, the trial court rescheduled the trial from September 29 to October 27.  However, Poehlmann did not contact Dr. Kessler, who had worked for Poehlmann in the past, until August 19.  On October 14, Poehlmann again moved to reschedule the trial, but the trial court denied that motion on October 16.  Only then did Poehlmann provide Long a copy of Dr. Kessler̓s report, which was dated October 9.  Thus, not only did Poehlmann delay in identifying Dr. Kessler, he also withheld his expert’s report when the trial was scheduled to begin in two weeks.

The purpose behind Rule 213 is to avoid surprise and to discourage tactical gamesmanship.  
Crull
, 294 Ill. App. 3d at 537.  Poehlmann engaged in the exact type of conduct that the rule was enacted to prevent, and thus we cannot say that he acted in good faith.  See
 
Ashpole
, 297 Ill. App. 3d at 729 
(where defense counsel planned on calling eyewitness but failed to disclose her, counsel acted in bad faith; trial court abused its discretion in allowing witness’s testimony)
. 

Since all six factors weigh in plaintiff’s favor, we hold that the trial court abused its discretion in allowing the testimony of Dr. Kessler.  See 
Ashpole
, 297 Ill. App. 3d at 728-29.

We likewise hold that the trial court abused its discretion in allowing defendant to admit the surveillance video of plaintiff.  The video was taken late in August 1997, and the anticipated trial date was October 27.  However, Poehlmann did not provide Long a copy of the video until October 29, when Dr. Kessler̓s evidence deposition was taken.  We conclude that a discovery violation occurred and that the trial court should have excluded this evidence.  See 166 Ill. 2d R. 214 (governing the production of objects and tangible things and imposing a seasonable duty to supplement).

Next, we must determine the appropriate remedy.  Plaintiff contends that, due to defendant’s discovery violations
, this case should be remanded for a new trial on damages. 
 Plaintiff suggests that the only evidence and testimony that should be admissible on remand is that which was
 properly disclosed prior to the November 1997 trial
.  Defendant makes no suggestion regarding the appropriate remedy.
  We agree with plaintiff to the extent that a new trial on damages is warranted.  However, plaintiff’s full suggestion notwithstanding, 
we remand this case with directions to the trial court to bar Dr. Kessler’s testimony and the surveillance video.  See
 
Ashpole
, 297 Ill. App. 3d at 729-30 
(where defendant violated Rule 213 by failing to identify witness in interrogatory answers or supplements, court erred in allowing witness’s testimony; appropriate sanction was to bar witness from testifying on remand).  
This remedy cures the trial court’s error, as it both penalizes defendant and provides plaintiff another opportunity to present her case.

We note that we are unable simply to strike the erroneously admitted testimony and recalculate plaintiff’s damages
, a remedy suggested
 by the 
Crull
 court.  See 
Crull
, 294 Ill. App. 3d at 538 (condemnation case involving the value of property). 
 In contrast to 
Crull
, the instant matter was a personal injury case tried before a jury on damages only, and we cannot be sure to what extent the improperly admitted evidence
 affected the jury.

For the reasons stated herein, we reverse the trial court’s judgment and remand the cause for a new trial on damages.

Reversed and remanded with directions.

THOMAS and RAPP, JJ., concur.