NO. 5-99-0236

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

JEFFREY FORD and GRACE FORD, )  Appeal from the

)  Circuit Court of

     Plaintiffs-Appellees, )  Madison County.

)

)  No. 96-LM-1439

)

WILBERT HERMAN, )  Honorable

)  Randall A. Bono,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

The defendant, Wilbert Herman, appeals from the trial court's March 5, 1999, order denying his posttrial motion.  We affirm.

Facts

On August 19, 1996, Wilbert Herman (Herman) was working with others doing home construction.  At the end of this particular workday, the men planned on waiting at the job site until the property owner arrived.  While waiting, Herman left the site temporarily, returning with a 12-pack of beer he had just purchased.  Herman admits to having consumed eight or nine of those beers in the following 90 minutes.  The property owner never arrived, and although Herman realized that he was intoxicated, he decided that he would drive his motor vehicle home.  Unfortunately, Herman did not make it home without incident.

Herman rear-ended another vehicle driven and occupied by Jeffrey and Grace Ford (Jeffrey, Grace, or the Fords).  As Herman drove down a busy street in Granite City, he noticed a vehicle in front of his, which later turned out to be that of the Fords, and further noticed that this vehicle was approaching a traffic signal that had just turned from green to yellow.  At that moment, Herman dropped a cigarette, instinctively bent to retrieve it, and in so doing took his eyes from the roadway.  When he next looked up, the Fords' vehicle was stopped, and Herman realized that he had not enough time and space to safely bring his vehicle to a stop behind their vehicle.  Herman slammed on his brakes, skidded 20 feet, and ultimately rear-ended the vehicle.

Jeffrey testified that he had the vehicle's window down and that he heard no tires squeal or any other sound indicating that a collision was imminent. 

As a result of the accident, both Jeffrey and Grace sustained bodily injuries and associated damages.  Jeffrey sustained left shoulder, neck, and left wrist injuries.  Grace sustained a right shoulder injury and aggravations of preexisting injuries to her neck and lower back.

Following the wreck, Herman was arrested and charged with driving under the influence of alcohol (DUI).  The August 19, 1996, DUI to which Herman pled guilty was his third.  His first DUI was in February 1974 and his second was in September 1975.  Not dissuaded by this accident and its related arrest, Herman continued to drive while intoxicated, picking up his fourth DUI in December 1996 and his fifth on January 1, 1999.

The Fords filed their suit for damages against Herman arising out of the August 19, 1996, accident on December 20, 1996.  Herman was insured by Gallant Insurance Company (Gallant) with applicable bodily injury limits of $20,000 per person.  Pursuant to his contract with the carrier, Gallant provided Herman with legal counsel.

On October 29, 1997, the trial court entered its case management order setting forth a discovery schedule and setting the case for trial on September 8, 1998.  The case management order did not specifically set forth a date on which discovery was to cease.  The case did not get reached for trial during the week of September 8, and so on September 25, 1998, the trial court reset the trial date for January 11, 1999.

On October 27, 1998, the Fords filed a motion seeking to amend their complaint to add a punitive damages prayer pursuant to section 2-604.1 of the Code of Civil Procedure (735 ILCS 5/2-604.1 (West 1996)).  On November 20, 1998, the trial court granted this motion.

On November 3, 1998, Herman filed a motion seeking to have the Fords examined by a physician chosen by Herman pursuant to Supreme Court Rule 215 (166 Ill. 2d R. 215).  On November 20, 1998, the trial court denied this motion.

The case went to trial on January 11, 1999.  At the pretrial conference, the trial court heard numerous motions 
in limine
 filed by both parties.  Herman's motion seeking to keep the jury from hearing evidence of his prior and subsequent DUIs was denied.

Following the trial, the jury returned a verdict for Jeffrey in the amount of $49,728 for his damages and a verdict for Grace in the amount of $28,965 for her damages.  The jury also returned a verdict for the Fords awarding them $6 million in punitive damages.

Following the trial court's March 5, 1999, denial of Herman's posttrial motion, Herman appealed.

Motions

As a preliminary matter, we must address motions renewed at oral argument that we ordered taken with the case.  The Fords seek the dismissal of this appeal on mootness grounds.  Gallant seeks to conditionally intervene.  Following oral argument, the Fords filed a supplemental memorandum in support of a motion to reconsider this court's order denying their motion to dismiss appeal.  In response to the Fords' oral motion, Gallant renewed its motion for leave to intervene and filed a request for time to respond to the Fords' supplemental memorandum.

Additional facts, necessary for a complete understanding of the motions, are included below.

The Fords' initial motion to dismiss Herman's appeal was denied by this court on September 14, 1999, and the Fords' motion to reconsider our decision was denied on December 14, 1999.  During oral argument, counsel for the Fords asked that we consider the motion for the third time, and the matter was taken under advisement

The recovery in this case was premised upon Herman's negligent operation of a motor vehicle insured by Gallant.  On January 27, 1999, after a judgment was entered upon the jury's verdicts, Gallant tendered three drafts to the Fords' counsel in partial satisfaction of the compensatory damages portion of the judgment.  The first draft in the amount of $20,111.87 was made payable to Jeffrey Ford.  A second draft was made payable to Grace Ford in the amount of $20,065.17.  The third draft was made payable to both Fords and was in the amount of $14,201.62.  The amounts paid in the three drafts represented the $40,000 policy limits plus interest from the date of the judgment through their tender, plus the costs of the suit.  Upon the receipt of these drafts, the Fords executed a partial satisfaction of judgment, which was filed in the circuit court on February 22, 1999.

Thereafter, in exchange for a release from further satisfaction of the judgment's balance, Herman assigned to the Fords his chose in action against Gallant and his attorneys for their bad faith in refusing to settle the Fords' claims within the $40,000 policy limits.  Upon their receipt of the assignment, the Fords executed a covenant not to sue Herman on the judgment's balance.

The Fords continue to contend that as Herman stands released from further personal liability under the judgment, only Gallant's attorneys are pursuing the appeal.  Therefore, the Fords argue that the appeal is moot since there is no real party in interest to pursue the matter.  They attach correspondence to their supplemental memorandum which they contend support this argument.  The first letter, dated July 26, 1999, was written by one of the attorneys hired by Gallant pursuant to the insurance agreement and was addressed to Herman's personal attorney.  The second letter, dated August 25, 1999, was from Herman's personal attorney and was directed to his Gallant-hired attorney.  Both letters involve the status of this appeal and Herman's interests.  The Fords contend that these letters assert that Herman wants Gallant, through the attorneys it hired to represent Herman, to drop this appeal.  These letters were previously attached to the Fords' September 17, 1999, motion to reconsider our order denying their motion to dismiss and were considered by this court in denying that motion.

We will briefly address the letters, as well as Herman's motivations for continuing this appeal.

As stated in our September 14, 1999, order, the partial satisfaction of judgment and covenant not to execute on the judgment's balance could not extinguish Herman's right to challenge the judgment on appeal.

With Herman as the real party in interest, his insurance company can insist upon his cooperation on appeal, as is required by his contract.  It would obviously be in Herman's best interest to so cooperate, because to do otherwise could subject him to further liability–not from the Fords who signed the covenant not to execute, but to Gallant in the event that it becomes responsible to pay the judgment over and above its policy limits.

While not likely, the remote possibility always remains that somehow the covenant not to execute would be rendered void and Herman would again be responsible for paying the judgment.  Furthermore, despite the existence of the covenant, the fact remains that Herman has a rather large judgment against him.  Having such a large monetary judgment on file against Herman will undoubtedly lead to financial and credit repercussions.  Therefore, seeking to have the judgment reduced or reversed could only serve to benefit Herman.

Reviewing Herman's assignment of his chose in action to the Fords, we note that nothing contained therein requires Herman to drop this appeal.  While the Fords' counsel alludes to the fact that Herman could face an invalidation of the assignment and/or the covenant, neither document contains such language.  Herman has simply agreed to cooperate in any subsequent suit filed against Gallant.

Finally, counsel for the Fords clearly overstates the importance of the language contained within the two letters as indicating that Herman in no way wanted this appeal to continue.  We initially note that Herman has not in any way personally petitioned to have this appeal dismissed.  As he clearly has personal counsel, it would have been easy enough for him to do so.  That he took no such action sends an important message.  Similarly, no correspondence from Herman's personal counsel to his newly hired defense attorneys directing this appeal's dismissal has been provided to this court for consideration.  As the Fords' counsel seems to be privy to such communication, we assume that none exists.  Furthermore, the August 25, 1999, letter from Herman's personal counsel is capable of more than one interpretation relative to his statement that this appeal should be discontinued.  This letter also contains Herman's demand that Gallant hire new counsel to represent him, different from trial counsel.  Why would Herman be so insistent that he needed insurance-

company-hired counsel long after the judgment was entered upon the verdict, if he had absolutely no intention of pursuing this appeal?

While it is possible that Herman's counsel made conflicting demands within this August 25, 1999, letter, it is also possible that Herman's counsel simply did not want trial counsel to represent him on appeal given the trial's outcome.  After reviewing these letters for the second time, we still find no basis upon which to change our earlier decision.

Similarly, we find no reason to grant Gallant's motion.

We reach the merits of this appeal.

Amendment of Complaint

Herman first contends that the trial court should not have allowed the Fords' motion for leave to amend their complaint to seek punitive damages, because their motion was not timely.  As a matter of substance, Herman does not contend that punitive damages are improper in light of his history of alcohol-related arrests, but he contends procedurally that the timing was wrong.

A trial court maintains broad discretion in deciding whether or not to allow a requested amendment to a complaint, and its decision will not be disturbed unless it abused that discretion.  
Loyola Academy v. S&S Roof Maintenance, Inc.
, 146 Ill. 2d 263, 273-74, 586 N.E.2d 1211, 1216 (1992).

Section 2-604.1 of the Code of Civil Procedure indicates, "Any motion to amend the complaint to include a prayer for relief seeking punitive damages shall be made not later than 30 days after the close of discovery."  735 ILCS 5/2-604.1 (West 1996).  The case management order did not specify a date by which all discovery had to be concluded.  The Illinois Supreme Court has indicated that when no discovery cutoff date is specified, discovery must be completed no later than 60 days "before the date on which the trial court reasonably anticipates the trial will commence."  166 Ill. 2d R. 218(c).

Therefore, the issue to be determined is when the trial court reasonably anticipated the trial's commencement.  Herman argues that the original trial setting must be utilized.  And, given that scenario, there is no question that the Fords' motion was untimely filed, as the original trial setting was September 8, 1998, and the motion was not filed until October 27, 1998.  The Fords argue that the trial court reasonably expected the trial to commence on January 11, 1999.  Using that date, the Fords did not have to file their motion until December 13, 1998.  Therefore, their October 27, 1998, motion would have been timely filed.

The only case cited by either party directly on point is 
Warrender v. Millsop
, 304 Ill. App. 3d 260, 710 N.E.2d 512 (1999).  A discovery order entered in a motor vehicle negligence case provided a February 10, 1997, trial date.  
Warrender
, 304 Ill. App. 3d at 262, 710 N.E.2d at 513.  The trial setting was continued three times.  
Warrender
, 304 Ill. App. 3d at 262-63, 710 N.E.2d at 513-14.  At issue on appeal was whether the trial court reasonably anticipated the trial's commencement on the initial date or on the final trial setting, for purposes of the discovery cutoff mandated by Supreme Court Rule 218(c).  
Warrender
, 304 Ill. App. 3d at 266, 710 N.E.2d at 516.  The appellate court held that the relevant date was the final date set by the trial court.  
Warrender
, 304 Ill. App. 3d at 266, 710 N.E.2d at 516. 

We agree with the court's conclusion in 
Warrender
.  Accordingly, the date upon which the Madison County Circuit Court reasonably anticipated that the trial would begin was January 11, 1999.  Discovery was to have been completed on or before November 12, 1998.  Pursuant to section 2-604.1 of the Code of Civil Procedure, the Fords could have filed their motion seeking leave to amend their complaint by adding a punitive damages request on or before December 13, 1998.  As the Fords filed their motion on October 27, 1998, the motion was timely.

Further support for the trial court's order allowing the Fords to add their request for punitive damages can be found in Supreme Court Rule 183 (134 Ill. 2d R. 183), which provides, "The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time."  The trial court's order allowing the request for punitive damages after the initial trial setting was also authorized by Supreme Court Rule 183 regardless of the trial's anticipated commencement and the 60-day rule mandated by Supreme Court Rule 218.

Remittitur of Punitive Damages Award

Herman next contends that the punitive damages award is so excessive that it should be remitted.  He does not challenge the award on the basis of insufficient evidence.

We will not overturn a punitive damages award as being excessive unless is it clear that the award is the result of "passion, partiality, or corruption."  
Kochan v. Owens-Corning Fiberglass Corp.
, 242 Ill. App. 3d 781, 797-98, 610 N.E.2d 683, 693-94 (1993), citing 
Deal v. Byford
, 127 Ill. 2d 192, 537 N.E.2d 267 (1989).

As this court has previously noted, Illinois views punitive damages as a punishment.  
Kochan
, 242 Ill. App. 3d at 797, 610 N.E.2d at 693.  This punishment serves three distinct purposes:  " '(1) to act as retribution against the defendant; (2) to deter the defendant from committing similar wrongs in the future; and (3) to deter others from similar conduct.' "  
Kochan
, 242 Ill. App. 3d at 797, 610 N.E.2d at 693, quoting 
Hazelwood v. Illinois Central Gulf R.R.
, 114 Ill. App. 3d 703, 712, 450 N.E.2d 1199, 1207 (1983).

Herman argues that the punitive damages award is not proportional to the compensatory damages awarded each of the Fords.  However, we have previously held that the amount of punitive damages awarded does not need to be proportional, especially when a proportional punitive damages award with a small compensatory damages award would do little to deter the particular defendant or others from "engaging in the same reprehensible pattern of conduct in the future."  
Tague v. Molitor Motor Co.
, 139 Ill. App. 3d 313, 318, 487 N.E.2d 436, 439 (1985); see also 
Deal
, 127 Ill. 2d at 204, 537 N.E.2d at 272 (holding that proportionality is not the touchstone for a punitive damages award).

Herman also argues that the punitive damages award is improper because the Fords presented no evidence of his financial condition.  The only reference to financial condition was made in 
voir dire
 and involved the fact that Herman was employed in the construction trade doing odd jobs.  Neither the Fords nor Herman presented any evidence on the issue.

Important considerations in reviewing a punitive damages award include "the nature and enormity of the wrong, the financial status of the defendant, and the potential liability of the defendant."  
Deal
, 127 Ill. 2d at 204, 537 N.E.2d at 272, citing 
Hazelwood
, 114 Ill. App. 3d at 712-13, 450 N.E.2d at 1207.  Those considerations are not exhaustive, and the underlying purpose of such an award must be furthered.  
Deal
, 127 Ill. 2d at 204, 537 N.E.2d at 272.

Herman contends that the Fords' failure to introduce evidence of his financial status was critical.  However, the absence of financial status evidence does not mandate that the punitive damages award be overturned.  
Deal
, 127 Ill. 2d at 204-05, 537 N.E.2d at 272.  Financial status is but one factor for the jury to consider.  
Deal
, 127 Ill. 2d at 204-05, 537 N.E.2d at 272.  The Fords were simply not required to present such evidence.  
Deal
, 127 Ill. 2d at 205, 537 N.E.2d at 272.  If a defendant facing a punitive damages claim realizes that the plaintiffs are not presenting what would clearly be relevant financial status evidence, the defendant bears the burden of putting on that evidence.  After all, the defendant is ultimately responsible for paying those damages.  If Herman knew that he would have financial difficulties in paying a punitive damages award, then he should have so informed the jury.  Herman cannot now complain that the Fords failed to present that evidence.  
Deal
, 127 Ill. 2d at 205, 537 N.E.2d at 272.  

The $6 million award serves many important purposes.  The size of the monetary award might finally deter Herman from driving while intoxicated where our criminal courts have failed.  Furthermore, the award should serve to deter other individuals from risking the lives of innocents by driving while intoxicated.  Finally, the award adequately punishes this particular defendant for his actions leading up to and including this accident.  Herman admitted that he knew he was intoxicated after consuming eight or nine beers in a relatively short amount of time.  He realized that his intoxication at that time would affect his judgment and ability to react while driving.  He understood that if he chose to drive his vehicle in his intoxicated state, he would be a danger to others.  Despite that knowledge, he decided to get behind the wheel of his vehicle and drive himself home.

Given the outrageousness of Herman's behavior, the fact that the award clearly serves the punishment and deterrence purposes of a punitive damages award, and the lack of proof that the award was the result of passion, partiality, or corruption, we conclude that the amount in question is not excessive.

Motion In Limine Regarding Defendant's Past and Subsequent DUIs

Herman next argues that the trial court erroneously denied his motion 
in limine
 which sought to prevent the introduction of evidence of his two prior and one subsequent DUI convictions.
(footnote: 1)  He contends that this evidence was prejudicial and served to bias and inflame the jury against him, which outweighed the evidence's probative value.  Counsel for the Fords did not specifically mention the DUI convictions in his opening statement but referenced Herman's "alcohol involvement" in the context of his explanation that the jury would be faced with deciding whether Herman should pay punitive damages.  Apparently as a matter of strategy to lessen the impact of such evidence, Herman's counsel told the jury about Herman's three other DUIs.  During Herman's examination by the Fords' counsel, Herman detailed his three other DUIs.  Herman's attorney did not object to these questions and elicited additional testimony from Herman about the DUIs in a rehabilitation effort.

A trial court judge maintains broad discretion in the admission of evidence and in ruling upon a motion 
in limine
.  
Green v. Union Pacific R.R. Co.
, 269 Ill. App. 3d 1075, 1082, 647 N.E.2d 1092, 1097 (1995).  Motions 
in limine
 are designed to produce a trial without the introduction of prejudicial material.  
Konieczny v. Kamin Builders, Inc.
, 304 Ill. App. 3d 131, 136, 709 N.E.2d 695, 699 (1999).  A trial court's ruling on an 
in limine
 motion is subject to reconsideration by the court throughout the trial.  
Konieczny
, 304 Ill. App. 3d at 136, 709 N.E.2d at 699.  So, whether the motion 
in limine
 is granted or denied does not, alone, preserve the issue for review.  
Konieczny
, 304 Ill. App. 3d at 136, 709 N.E.2d at 699.  If the trial court denies the motion 
in limine
, the party seeking to bar the introduction of the subject evidence must object to that evidence when it is offered during the trial.  
Konieczny
, 304 Ill. App. 3d at 136, 709 N.E.2d at 699.  If the movant failed to object to the later introduction of evidence that was the subject of the motion 
in limine
, the issue is waived on appeal.  
Konieczny
, 304 Ill. App. 3d at 136, 709 N.E.2d at 699.

While Herman's counsel filed his motion 
in limine
, he failed to object to the later introduction of the evidence during Herman's examination.  Accordingly, he did not preserve the issue for review, and we find that the issue is waived.

Denial of Motion for Medical Examination

Herman finally argues that the trial court erred in denying his November 3, 1998, motion to compel physical examination pursuant to Supreme Court Rule 215 (166 Ill. 2d R. 215).  Herman essentially contends that because the motion was filed 68 days before the trial's commencement, he complied with Supreme Court Rule 215's requirement that the motion be made within a "reasonable time before the trial ***."  166 Ill. 2d R. 215(a).

On a review of a motion denying a motion for medical examination, we must determine if the trial court abused its discretion.  
Harris v. Mercy Hospital
, 231 Ill. App. 3d 105, 107, 596 N.E.2d 160, 162 (1992).

Herman argues the reasonableness of his request by stressing that 68 days remained before the trial was scheduled to commence.  Without regard for discovery deadlines, 68 days is a relatively long time.  The problem is with the scheduling.  No dates were proposed for examinations and subsequent depositions.  So the trial court could not know when those events would be completed.  Furthermore, the trial court could not discount the discovery deadline established by Supreme Court Rule 218(c), which requires all discovery (including a Supreme Court Rule 215 examination and any depositions) to be completed "not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence."  166 Ill. 2d R. 218(c).  Without continuing the trial setting, it is extremely doubtful that these matters could have been completed within that time frame–on or before November 12, 1998.  And we will never know whether they could have been so completed because Herman failed to provide proposed dates to the court as a part of his request.  Since Herman did not seek an expedited hearing of his motion in order to comply with the 60-day rule (the hearing was set for November 20, 1998), the requested examination would obviously not have been timely completed without moving the trial setting.  While the time frame of Supreme Court Rule 218(c) may have some flexibility, we will not find that the trial court abused its discretion without an understanding of the actual timing of the discovery that Herman proposed.  Herman chose not to provide that information to the trial court, and he must now bear the result of that failure.

CONCLUSION

For the foregoing reasons, the Fords' motion to reconsider their motion to dismiss appeal on mootness grounds is hereby denied, Gallant's motion for leave to intervene and request for time to respond to the Fords' supplemental memorandum is hereby denied, and the judgment of the circuit court of Madison County is hereby affirmed.

Motion to dismiss appeal denied; motion for leave to intervene and for additional time denied; judgment affirmed.

GOLDENHERSH, P.J., and MAAG, J., concur.

FOOTNOTES
1:
The motion addressed only the two prior DUIs and the subsequent December 1996 DUI.  The DUI that was the subject of this case was not included.  Additionally, in response to questioning by the Fords' counsel, Herman acknowledged that he had received his fifth DUI on January 1, 1999.  As the newest DUI was unknown to Herman's attorney, it was not included in this motion to exclude evidence of the DUIs and also was not included in his remarks about Herman's DUI history in his opening statement to the jury.