NO. 4-01-0642

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

DIANNA J. BOEHM, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v.      ) Macoupin County

DAVID RAMEY, ) No. 99L21

Defendant-Appellant. ) 

                      ) Honorable

) Thomas P. Carmody,

) Judge Presiding.

_______________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Dianna Boehm, and defendant, David Ramey, were involved in an automobile accident when defendant rear-ended plaintiff's vehicle while she was stopped and waiting to make a left-hand turn.  After a jury trial in the circuit court of Macoupin County, plaintiff was awarded $75,000 in damages.  Defendant appeals and asserts the following errors: (1) the trial court erred in allowing plaintiff to surprise defendant at trial with opinion testimony not disclosed in pretrial discovery; (2) damages were awarded for past physical therapy, future medical expenses, and lost income without sufficient proof; (3) the jury was instructed as to future loss of normal life and aggravation of a preexisting condition when insufficient evidence was presented to warrant such instructions; (4) aggravation of preexisting condition was duplicative of other elements of damages; and (5) doctor's fee for attending an evidence deposition used by plaintiff at trial and costs of transcribing a video deposition for plaintiff's use were improperly assessed against defendant.  We reverse and remand for a new trial on damages.

I. BACKGROUND

On July 31, 1998, plaintiff was driving her automobile in Carlinville when she stopped at an intersection to make a left turn.  As she waited for oncoming traffic to pass, defendant approached her vehicle from behind and rear-ended plaintiff's car at a low rate of speed.  The collision left a minor dent in plaintiff's fender.  The only damage to defendant's car was a broken headlight.  Plaintiff refused medical treatment at the scene of the accident and left in her car, returning home.  She took a nonprescription pain medication and went to bed.

The next morning, August 1, 1998, plaintiff sought medical attention at the local hospital emergency room for pain in her neck and right arm and headache.  X rays showed degenerative arthritis in the spine as well as osteophytes, arthritic spurs, in the lower part of her neck.  She was told to contact her regular doctor.  After leaving the emergency room, plaintiff went to see Dr. Thomas Brown, a chiropractor who had been treating her for approximately a year prior to the accident for "subluxations," or minor misalignments of the vertebrae.  Prior to the accident, Dr. Brown had recommended maintenance chiropractic care for the rest of plaintiff's life due to these subluxations.  

After examining plaintiff on August 1, Dr. Brown diagnosed subluxations in the neck, muscular spasms, and reverse cervical curve as a result of cervical acceleration-deceleration syndrome or whiplash.  Dr. Brown treated plaintiff with ultrasound muscle stimulation, massage therapy, and chiropractic adjustments.  He found the pain in plaintiff's muscles diminished but the pain in her ligaments remained strong.    Because plaintiff was not responding as well as hoped, Dr. Brown suggested she see a neurologist.  Plaintiff went to see Dr. Wesley Betsill on August 31, 1998.  Dr. Betsill previously treated plaintiff on December 15, 1988, for severe pain in the base of her neck radiating down the right arm after lifting a heavy load.  Dr. Betsill diagnosed acute cervical disc protrusion with right C7 radiculopathy and placed plaintiff in traction in the hospital for two days.  Dr. Betsill saw her again in 1994 when she complained of neck pain, and he diagnosed osteoarthritis in her neck.  He saw her again in May 1996 when she complained of pain in the neck and numbness in her arm.  

When Dr. Betsill saw plaintiff in 1998 he could find no physical abnormalities.  She appeared to be a healthy woman; he had nothing to go on except her complaints of pain.  He assured her she had not sustained a serious injury in the accident of July 31, because her symptoms were no different from those which had been bothering her for 10 years.  Dr. Betsill prescribed pain medication.

Plaintiff left Dr. Betsill's office and went to another neurologist, Dr. M.L. Mehra.  Dr. Mehra diagnosed plaintiff as suffering from whiplash and concussion headache.  He did not have the benefit of Dr. Betsill's records and admitted in his testimony he had no basis for disputing Dr. Betsill's conclusion plaintiff's symptoms now were no different from those she suffered for the previous 10 years.  Dr. Mehra prescribed pain medication and physical therapy.  Plaintiff underwent physical therapy at the local hospital throughout 1998.  She returned to Dr. Mehra in July and September 1999, still complaining of pain in her neck and shoulder.  She returned for physical therapy in September 1999.  

In January 2001, plaintiff returned to Dr. Brown's care.  At that time, Dr. Brown found plaintiff had decreased range of motion in her cervical spine and was unable to perform daily activities without pain.  Dr. Brown diagnosed chronic cervical acceleration-deceleration syndrome.  He admitted most of his diagnosis came from plaintiff's subjective complaints of pain and not objective observations.  Dr. Brown recommended maintenance chiropractic care for the rest of plaintiff's life.

Shortly before trial, at defendant's request, plaintiff was examined by neurologist Dr. Simon Horenstein.  Dr. Horenstein found a slight limitation in the range of motion in plaintiff's neck and some visible osteoarthritis in her finger joints.  He concluded the limitation of range of motion in her neck was due to the same arthritic process evident in her finger joints.  He stated although there was the possibility of a further test, he did not feel plaintiff would benefit from further diagnosis or treatment.   

Plaintiff cleaned houses for a living prior to the accident.  After the accident, she was off work completely for three to four months.  Due to her fairly constant pain, she had been unable to resume a complete workload and had dropped from cleaning 10 to 13 houses per week to only 3 or 4.  She claimed loss of income of approximately $15,000 per year.    Plaintiff's medical bills totaled approximately $5,500.    

The jury awarded plaintiff a total of $75,000 in damages itemized as follows:

Past pain and suffering $15,000.00

Future pain and suffering 0.00

Past medical expenses  5,500.00

Future medical expenses  5,000.00

Past loss or earnings 30,000.00

Future loss of earnings 0.00

Loss of normal life  4,500.00

Aggravation of preexisting 15,000.00

 condition         

TOTAL 75,000.00.

At the close of all the evidence, the trial court directed a verdict on liability in favor of plaintiff.  Defendant filed a posttrial motion, which the trial court denied.  This appeal followed.

II. ANALYSIS

A. Reversible Error Occurred In Admission of Undisclosed

Opinion Witness Testimony Contrary to Rule 213

Defendant contends, first, it was reversible error for the trial court to allow surprise testimony from plaintiff's treating-physician witness.  At trial, plaintiff called Dr. Brown to testify to plaintiff's treatment, the causation of her injuries and the necessity of future medical treatment.  While he was testifying, Dr. Brown was asked by plaintiff's counsel whether there was any relationship between the force of an impact and the severity of the resulting injury.  Over objections by defendant, Dr. Brown testified the 
most
 damage done to the cervical spine is in lower-speed accidents.  This opinion was not disclosed at either Dr. Brown's discovery deposition or in answers to interrogatories as required by Supreme Court Rule 213 (177 Ill. 2d R. 213).  Thus, defendant argues it was reversible error to allow this testimony.

There are several discovery rules applicable to opinion witnesses.  Supreme Court Rule 213 reads, in relevant part:

"(g) Opinion Witnesses.  An opinion witness is a person who will offer any opinion testimony.  Upon written interrogatory, the party must state:

(i) the subject matter on which the opinion witness is expected to testify;

(ii) the conclusions and opinions of the opinion witness and the bases therefor; and

(iii) the qualifications of the opinion witness;

and provide all reports of the opinion witness.

***

(i) Duty to Supplement.  A party has a duty to seasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party.  

If a deposition of an opinion witness is taken, the witness' testimony at trial will be limited to the opinion expressed therein, in addition to those opinions identified in answers to Rule 213(g) interrogatories.  

The opinions expressed in a deposition need not be later specifically identified in Rule 213(g) answers but, upon objection at

trial, the burden is on the proponent of the 

witness to prove the opinions were provided 

in deposition or Rule 213(g) interrogatory."  

177 Ill. 2d Rs. 213(g), (i).

Supreme Court Rule 218(c) states, in pertinent part:

"All dates set for the disclosure of opinion witnesses and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence."  166 Ill. 2d R. 218(c).

The committee comments to Rule 213(g) provide in pertinent part: 

"It is the Committee's belief that in order to avoid surprise, the subject matter of all opinions must be disclosed pursuant to this rule and Supreme Court Rule 218, and that no new or additional opinions will be allowed unless the interests of justice require otherwise."  177 Ill. 2d R. 213(g), Committee Comments, at xxx-xxxi.

Rules 213(g), 213(i), and 218(c) work together to ensure that, upon written interrogatory and no later than 60 days prior to anticipated date of trial, parties disclose the subject matter, conclusions, opinions, qualifications, and reports of opinion witnesses.  
Warrender v. Millsop
, 304 Ill. App. 3d 260, 266, 710 N.E.2d 512, 516 (1999).

If an opinion is important to a case, it and the basis for it must be disclosed prior to trial.  
Seef v. Ingalls Memorial Hospital
, 311 Ill. App. 3d 7, 24, 724 N.E.2d 115, 128 (1999).  No exceptions have been recognized for Rule 213 disclosure.  
Regala v. Rush North Shore Medical Center
, 323 Ill. App. 3d 579, 585, 752 N.E.2d 443, 448 (2001), 
appeal
 
denied
, 197 Ill. 2d 584, 763 N.E.2d 777 (2001).  The express language of Rule 213 provides each party is required to disclose an opinion witness' proposed testimony, including conclusions and the bases of those conclusions.  
Department of Transportation v. Crull
, 294 Ill. App. 3d 531, 536, 690 N.E.2d 143, 147 (1998).  The supreme court rules on discovery are mandatory rules of procedure and must be followed.  
Crull
, 294 Ill. App. 3d at 537, 690 N.E.2d at 147.  This court in 
Crull
 admonished trial courts to "be more reluctant under Rule 213 than they were under former Rule 220(1) to permit the parties to deviate from the strict disclosure requirements, or (2) not to impose severe sanctions when such deviations occur."  
Crull
, 294 Ill. App. 3d at 539, 690 N.E.2d at 148.

Admission of evidence pursuant to Rule 213 is within the trial court's discretion and the court's ruling will not be reversed absent an abuse of discretion.  
Crull
, 294 Ill. App. 3d at 537, 690 N.E.2d at 147.  It is an abuse of discretion to allow parties to present opinions at trial without having disclosed those opinions in response to Rule 213(g) interrogatories.  
Warrender
, 304 Ill. App. 3d at 270, 710 N.E.2d at 519.

The testimony objected to in this case was as follows:

"Q.  Have you had occasion to study and 

be aware of some of the facts of this whiplash-

type injury?

A.  Yes.  I do that as part of my continu-

ing education.

Q.  And what do you find in regard to 

permanency involved in these kinds of injuries?

A.  The latest research by two gentlemen 

named Forman and Croft.

MR. HOLLEY [(defense counsel)]: Let me 

interpose an objection.  I think this is 

improper to cite.

THE COURT: Overruled.

Q.  You may answer.

A.  The latest research that I've read and 

understood and taken classes on shows that 

about 25 percent of all whiplash accidents--the 

whiplash meaning cervical acceleration and 

deceleration--about 25 percent of them have 

permanent injuries due to this, and about 75

percent of them have full recovery.

Q.  Does it matter much about the velocity 

or the force of the impact?

MR. HOLLEY: Same objection, and also under 

[Rule] 213(g).

MR. REES[(plaintiff's counsel)]: May  

we approach the bench?

THE COURT: I'm going to overrule the 

objection.  You may proceed.

Q.  Do you under [
sic
] the question?

A.  Yes.  In the study of this whiplash  

we find that most, the most damage done to the

cervical spine is in the lower speed accidents.

Because as the–as more metal bends, most of 

the stress, or more of the stress, is taken

off the person and into the metal.  That's why

you have comfortable zones in cars so that slow

speed injury where there's no bending of metal,

that energy is transferred right into the 

cervical spine or into the person, at which 

shows up mostly in the neck.

MR. REES: Your Honor, could we approach 

the bench for just a moment?

THE COURT: Yes, you may.

(Bench conference between the 

Court and counsel, off the re-

cord, outside the hearing of 

the jury.)

MR. REES: May I approach the witness, your 

Honor?

THE COURT: You may.

Q.  I'm going to show you what has been 

marked for identification as [d]efendant's 

[e]xhibit No. 1 and 2.  If I advised you that 

was [plaintiff's] automobile, would you take 

a moment and view the damage to the automobile?

A.  Yes.  

MR. HOLLEY: Judge, could you show this 

as a continuing objection under [Rule] 213(g)?

THE COURT: The [c]ourt will treat it as  

a continuing objection.  It's overruled.  And 

if it reaches a point that I think it should

be sustained, I'll make that ruling.

Q.  After observing those photographs,  

is there anything about those photographs and 

the damage that you see that would cause you 

to change your testimony or your feelings 

about this matter?

A.  No.  This is the first time I've 

seen these.  And it appears that there's one 

dent in the middle of the bumper, but it 

doesn't appear that there was a lot of com-

pression of that bumper.  So it appears that, 

probably, the energy was transferred through 

most of the car.

Q.  Thank you.  Doctor, based upon a 

reasonable degree of medical and chiropractic 

certainty, do you have an opinion as to whether 

or not the automobile collision that [plaintiff] 

described to you would or could have been the

proximate cause of the complaints and the in-

juries that she related to you?

A.  Yes.  I believe the automobile accident

was directly responsible for her injuries."

Pursuant to Rule 213(i), after defendant objected to the testimony on Rule 213(g) grounds, plaintiff was required to prove the opinion was provided in interrogatory answers or discovery deposition testimony.  She did not do so.  Plaintiff was allowed to use Dr. Brown to testify the low speed on impact, as evidenced by defendant's photos of slight damage as well as testimony by defendant himself, resulted in 
more
 severe injuries to plaintiff.  

The opinion offered by Dr. Brown as to injuries incurred in low-speed accidents was neither disclosed in required pretrial discovery, nor was it an elaboration on an opinion which 
was
 disclosed.  Defense counsel did argue in closing that common sense would tell us a low-impact collision would not result in serious injuries, but defendant was unnecessarily prejudiced by the trial court allowing Dr. Brown to give his opinion on the subject.  This was an abuse of discretion warranting reversal and remand for a new trial on damages.

B. When IPI Civil No. 30.21 is Given, IPI Civil No. 30.03 

Should Not Be Given

Relying on 
Smith v. City of Evanston
, 260 Ill. App. 3d 925, 935-36, 631 N.E.2d 1269, 1277 (1994), defendant also argues "aggravation of a preexisting condition" should not be treated as a separate element of damages because it duplicated or overlapped other elements of damages, namely, "loss of a normal life," "pain and suffering," and loss of earnings, and the jury should not have been instructed it could compensate plaintiff separately for aggravation.  We agree with 
Smith
.  An award of damages for aggravation of a preexisting condition overlaps with any award obtained for all of the other elements of damages.  Stated another way, there is no need for Illinois Pattern Jury Instructions, Civil, No. 30.03 if No. 30.21 is given (Illinois Pattern Jury Instructions, Civil Nos. 30.03, 30.21 (2000)).

C. Assessment of Doctor Fees For Evidence Deposition

and Costs For Transcending Video Deposition

Defendant also contends the trial court erred in taxing him with the appearance fee for Dr. Mehra's evidence deposition taken by plaintiff and with the cost of making a copy of Dr. Horenstein's video deposition for plaintiff. A prevailing party may recover costs if a statute or supreme court rule so provides.  
Gleason v. Carter
, 212 Ill. App. 3d 206, 208, 570 N.E.2d 1196, 1197 (1991).  Section 5-108 of the Code of Civil Procedure provides for the trial court to award a plaintiff certain costs if judgment is entered for the plaintiff.  735 ILCS 5/5-108 (West 2000).  A party recovering costs under statute or supreme court rule is limited to costs specifically allowed, and a trial court's judgment awarding costs will not be reversed absent abuse of discretion.  
Gleason
, 212 Ill. App. 3d at 208-09, 570 N.E.2d at
 1197-98.  

Section 5-108 fails to define "costs" or describe what costs are recoverable.  The proper definition of "costs" has been left for the courts to determine.  
Boyle v. Manley
, 263 Ill. App. 3d 200, 206, 635 N.E.2d 1014, 1018-19 (1994)
.  Rule 208(d) (134 Ill. 2d R. 208(d))
 authorizes the trial court to tax only those deposition expenses "necessarily used at trial."  
Galowich v. Beech Aircraft Corp.
, 92 Ill. 2d 157, 166, 441 N.E.2d 318, 322 (1982).  Depositions must be indispensable at trial to tax costs.  
Boyle
, 263 Ill. App. 3d at 206, 635 N.E.2d at 1019.

Courts have discussed what "necessarily used at trial" and "indispensable" to trial means and have concluded the witness must be either dead or missing to tax as costs the charge of a doctor for an evidence deposition.  
Irwin v. McMillan
, 322 Ill. App. 3d 861, 865, 750 N.E.2d 1246, 1250 (2001).  While a treating physician's demanding surgery schedule has been found to prevent his live testimony and make his evidence deposition necessary to trial and, thus, the costs of his deposition properly assessed as a cost to the losing party (
Perkins v. Harris
, 308 Ill. App. 3d 1076, 1079-80, 720 N.E.2d 1131, 1134-35 (1999)), where a plaintiff did not offer any reason for the unavailability of an expert witness, he failed to show his evidence deposition was indispensable and costs could not be assessed.  
Wiegman v. Hitch-Inn Post of Libertyville, Inc.
, 308 Ill. App. 3d 789, 804, 721 N.E.2d 614, 627 (
1999).

Here, no evidence reflected on Dr. Mehra's availability at the time of trial.  The trial court abused its discretion in finding defendant could be taxed Dr. Mehra's witness fee as costs. 

The trial court also abused its discretion in taxing as costs to defendant the fee charged plaintiff for a copy of Dr. Horenstein's video deposition taken by defendant.  Supreme Court Rule 208(a) provides:

"(a) 
Who Shall Pay
.  The party at whose instance the deposition is taken shall pay the fees of the witness and of the officer and the charges of the recorder or stenographer for attending.  The party at whose request a deposition is transcribed and filed shall pay the charges for transcription and filing.  The party at whose request a tape-recorded deposition is filed without having been transcribed shall pay the charges for filing, and if such deposition is subsequently transcribed the party requesting it shall pay the charges for such transcription."  134 Ill. 2d R. 208(a).

Rule 208(a) seems to put the costs of filing a tape- recorded deposition on the party requesting it be filed (in this case defendant) and the cost of transcribing it on the party requesting a transcription (in this case plaintiff).

D. Remaining Issues

The remaining issues defendant raises in his appeal could arise in the context of a new trial.  Defendant contends there was not sufficient proof of damages for past physical therapy, future medical expenses, and lost income.  We assume these elements of damages will be claimed in any new trial; however, these issues involve the quantum and quality of proof in the trial that has already occurred.  We do not know how the evidence may be presented when a new trial is conducted.  Thus, we decline to address these three contentions.

III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment as to damages and remand the case for new trial on damages.

Reversed and remanded.     
    

MYERSCOUGH and TURNER, JJ., concur.