CARUS CHEMICAL COMPANY, Plaintiff-Appellee, v. CALCIQUEST, INC., *et al.*, Defendants-Appellants.

Third District   No. 3—02—0913

Opinion filed July 9, 2003.

Ian M. Sherman and Marc A. Primack, both of Rooks, Pitts & Poust, of Chicago, and Pamela Davis Gorcowski (argued), of Rooks, Pitts & Poust, of Joliet, for appellants.

William G. Miossi (argued) and Brian K. LaFratta, both of Winston & Strawn, of Chicago, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff, Carus Chemical Company, sued defendants, John Charlton and Calciquest, Inc., for breach of contract and violation of the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq.* (West 2000)). Carus obtained a preliminary injunction prohibiting defendants from comparing the products manufactured by Carus and Calciquest. After discovering that Carus itself had published a comparison between the products in a bid proposal, defendants petitioned the court to dissolve the preliminary injunction and to sanction Carus. The trial court denied the motions and defendants filed this interlocutory appeal. We reverse the trial court's decision on the motion to dissolve and affirm its refusal to order sanctions.

John Charlton testified that he held a number of technical and marketing positions with Carus that gave him unique access to certain trade secrets and confidential information. Charlton signed a confidentiality agreement as a condition of his employment with Carus, in which he agreed not to use or disclose (directly or indirectly) any confidential information after his employment ended. The agreement defined "confidential information" as all processes, techniques, compositions, etc., which "are in the possession of Carus and which have not been published or disclosed to the general public."

Charlton ended his employment with Carus and went to work for Calciquest. Carus and Calciquest manufacture similar chemical products used in community water supplies to control corrosion. Charl-

ton was in the process of selling Calciquest's product to a customer when he sent a letter that included the following language:

"Please find enclosed a product data sheet for CalciQuest Liquid, our primary liquid phosphate blend for corrosion control and sequestering. It is, essentially, identical to Aqua Mag [Carus' product], both in specifications and in chemical composition. Chromatographic analysis shows the two compounds to be virtually identical. The thermal process used to make these liquid blends is also identical. As a chemist, I have no doubt that the two compounds are interchangeable."

Carus filed a motion for a temporary restraining order alleging that defendants used and revealed confidential and trade secret information by divulging Carus's proprietary thermal process. Carus claimed that disclosure of the information could result in enormous economic losses, and that by disclosing the thermal process, Charlton breached his confidentiality agreement. In support of its motion, Carus vice-president Len Kubera testified that: "Asserting that the thermal process used to make the two competing products is identical, necessarily demonstrates that Mr. Charlton has used and disclosed Carus' trade secret information for the benefit of Calciquest and to Carus Chemical's detriment."

The court entered a temporary restraining order and on July 16, 2002, granted a preliminary injunction prohibiting "defendants from making comparisons to the Aqua Mag thermal process and/or production process."

Meanwhile, Carus had attached a copy of the Charlton letter to a bid proposal Carus submitted to Miami-Dade County on June 19, 2002. In that proposal, Kubera wrote that "[i]t should be noted that our products continue to be used as a 'bench mark' by our competitor, your current supplier, who has issued written statements that their product is 'identical' to the Carus Chemical Company product." Kubera referenced the letter as support for that claim.

When defendants became aware that Carus had used Charlton's letter in its Miami-Dade negotiations, they filed a motion to dissolve the injunction and to impose sanctions on Carus pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). During the hearing on the motion to dissolve, Carus admitted that no confidential information or trade secrets were disclosed in Charlton's letter. The trial court denied the motion to dissolve and the motion for sanctions.

I

The defendants argue that the trial court abused its discretion when it denied defendants' motion to dissolve the preliminary injunction. See *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 366 (2001).

■ In order to obtain a preliminary injunction, a party must establish four factors: (1) a clearly ascertainable right in need of protection, (2) the risk of irreparable harm if the injunction is not granted, (3) the lack of any adequate legal remedy, and (4) the likelihood of success on the merits. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156 (1992). The failure to establish any of the four factors will preclude the court from issuing the injunction. *Hartlein*, 151 Ill. 2d at 156.

We believe that Carus's disclosure of Charlton's letter vitiated the need for a preliminary injunction. When Carus sent the letter to Miami-Dade County, the information was no longer confidential. In effect, Carus had republished the letter, putting it into the public domain. Since the information became public by Carus's own hand, defendants' further use of it cannot be said to cause Carus irreparable harm. *Cf. Heller v. Howard*, 11 Ill. App. 554, 560 (1882) (holding that the repetition of a slanderous statement is not actionable when plaintiff consents to the repetition).

In *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86 (3d Cir. 1992), the plaintiff obtained an injunction prohibiting defendant from using or exploiting the plaintiff's product preparation process. The defendant became familiar with the process while employed by plaintiff. The plaintiff obtained a patent for the process before suit was filed; in the patent application, the details of the process were disclosed. The appellate court found that further disclosure of facts already revealed could not constitute irreparable harm and reversed the award for injunctive relief. *Campbell Soup Co.*, 977 F.2d at 92.

■ Our supreme court decided a similar issue in *ILG Industries, Inc. v. Scott*, 49 Ill. 2d 88 (1971), where the plaintiff obtained an injunction preventing former employees from using its trade secrets. The court, in determining whether the documents used by defendants were indeed trade secrets, made the following observation: "That which is of general knowledge within an industry cannot be a trade secret; something which is fully and completely disclosed by a business through its catalogs or literature disseminated throughout an industry cannot be a trade secret." *ILG Industries, Inc.*, 49 Ill. 2d at 93. Although we are not determining the existence of a trade secret in this case, the principle remains the same. Charlton's letter comparing the two formulas ceased to be proprietary or protectable when Carus republished it.

■ Furthermore, under the terms of the preliminary injunction, Carus is free to compare the thermal processes of the two companies, but defendants are not. The threat of irreparable harm is belied by Carus's ability to use the letter as a sword in its competition with

defendants while relying on the preliminary injunction as a shield against them. Thus, while the preliminary injunction improperly protects Carus, it also acts as an unreasonable restraint on competition. See *ILG Industries*, 49 Ill. 2d at 93-94.

Since the information is not confidential, no threat of irreparable harm exists, and Carus is not entitled to injunctive relief. The preliminary injunction must be dissolved. See *Hartlein*, 151 Ill. 2d at 156.

We make no comment on other issues pending in the trial court.

## II

■ Defendants complain that the trial court erred by not imposing sanctions on Carus under Supreme Court Rule 137 (155 Ill. 2d R. 137). Defendants claim that Carus made allegations in its complaint which it must have known were untrue.

We will not reverse a trial court's decision to deny sanctions absent an abuse of discretion. *Belfour v. Schaumburg Auto*, 306 Ill. App. 3d 234, 243 (1999). A party requesting sanctions bears the burden of proving both that the statements in the pleadings are untrue and that they were made without reasonable cause. *In re Estate of Baker*, 242 Ill. App. 3d 684, 688 (1993).

Although Carus had previously published Charlton's letter, it may have had reasonable cause to believe it was entitled to relief based on the allegations in the complaint. Though we have found that Carus is not entitled to a preliminary injunction, we cannot say that Carus made the allegations without reasonable cause. A general assertion of impropriety is insufficient to warrant sanctions. See *In re Estate of Baker*, 242 Ill. App. 3d 684, 688 (1993). The trial court did not abuse its discretion in refusing to sanction Carus.

## CONCLUSION

The order of the circuit court of La Salle County is reversed in part and affirmed in part.

Reversed in part and affirmed in part.

HOLDRIDGE and SCHMIDT, JJ., concur.