# Illinois Official Reports

## Appellate Court

---

### *Kotara, LLC v. Schneider*, 2018 IL App (3d) 160525

---

| | |
|---|---|
| Appellate Court Caption | KOTARA, LLC, an Illinois Limited Liability Company, and BRAIDKOT, LTD., an Illinois Corporation, Plaintiffs-Appellants and Cross-Appellees, v. ANN L. SCHNEIDER, in Her Official Capacity as Secretary of Transportation, Defendant-Appellee and Cross-Appellant. |
| District & No. | Third District<br>Docket Nos. 3-16-0525, 3-16-0772 cons. |
| Filed | January 18, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 12-MR-978; the Hon. Roger D. Rickmon, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Langdon D. Neal, Lenny D. Asaro, and Charlotte M. Huffman, of Neal & Leroy, LLC, of Chicago, for appellants.<br><br>Lisa Madigan, Attorney General, of Springfield (Amanda Ripp, Special Assistant Attorney General, of Walker Wilcox Matousek, LLP, of Chicago, of counsel), for appellee. |

Panel                           PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices Lytton and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1       Plaintiffs, Kotara, LLC, and Braidkot, Ltd., filed a complaint in the trial court for *mandamus* relief, seeking to compel defendant, Ann L. Schneider, in her official capacity as Secretary of Transportation, to file an eminent domain action as to certain real property that was allegedly owned by plaintiffs and taken by defendant for a road-widening project. After a bench trial on the *mandamus* complaint, the trial court ruled in favor of defendant, denied plaintiffs' claim for *mandamus* relief, and awarded defendant costs of suit. Defendant filed a posttrial motion seeking to impose Illinois Supreme Court Rule 137 (eff. July 1, 2013) sanctions (frivolous litigation) against plaintiffs and to set the amount of costs awarded. The trial court denied defendant's request for sanctions and set the award of costs at a much lower amount than defendant had requested. Both sides appeal. Plaintiffs challenge the trial court's bench-trial ruling (appeal), and defendant challenges the trial court's denial of its request for sanctions and the amount of costs that the trial court awarded (cross-appeal). We affirm the trial court's judgment.

¶ 2                               FACTS

¶ 3     Plaintiffs owned certain real property (the whole property or the property) at the northwest corner of the intersection of Routes 53 and 113 in Braidwood, Will County, Illinois, upon which they operated a grocery store. Plaintiffs had purchased the property and the grocery store in November 2005. The property ran in a northeasterly direction from Route 113 and along the line of, and adjacent to, Route 53. The property had previously consisted of two separate adjoining parcels: parcel one and parcel two. Parcel two abutted the intersection, and parcel one was located behind parcel two. At the back of, or behind, parcel one was a portion of Oak Street, which had been vacated in that area, and behind that was what has been referred to in this case as the "Polk-a-Dot" property. When plaintiffs purchased the whole property in 2005, they received a deed for each parcel; a survey of the whole property, which had been prepared by Joseph Gentile, a licensed Illinois surveyor; and a title commitment. The pertinent deed provided that the rear boundary of the property (the northeast property line) was at the centerline of vacated Oak Street. In addition, the title commitment provided a survey endorsement, which allowed plaintiffs to have another survey prepared at the title company's expense if any problems arose.

¶ 4     In March 2007, defendant brought eminent domain proceedings against plaintiffs, seeking to take a portion of the property for a road-widening project. During the course of the eminent domain proceedings, a dispute arose between plaintiffs and defendant. Defendant had performed some additional construction work on a small area of land that was located in the rear, northeast corner of what plaintiffs believed to be their property. That area was outside the area of original taking and has been referred to in this case as the area of additional taking. In that area, defendant performed excavation and trenching work and

installed a storm sewer, curb, gutter, and asphalt. When plaintiffs found out about the work, they requested that defendant either amend the complaint in the eminent domain proceedings or initiate separate eminent domain proceedings to ascertain and pay just compensation for the area of additional taking.

¶ 5 Defendant refused. Although defendant had previously offered plaintiffs compensation for the original taking based upon the whole property, including the area of additional taking, defendant took the position that there was a gap area or a disputed area in the rear of the property that plaintiffs either did not own or to which plaintiffs could not show ownership. Defendant's position was based upon a plat of highways that had been prepared by defendant's surveyor, Ronald Hodgen, an Illinois licensed surveyor, in about 2005. Hodgen had located the centerline of vacated Oak Street in the field by taking the dimensions that were provided in an older plat for the distance between the section line (a surveying point of reference) and the centerline of vacated Oak Street and by verifying those dimensions with the dimensions provided from the section line in the Polk-a-Dot deed. Based upon his research and his work in the field, Hodgen determined that the rear property line of plaintiffs' property was actually 25 feet further southwest in relation to Route 113 than the rear property line that had been drawn in the Gentile survey. In short, Hodgen determined that the abutting property line of the Polk-a-Dot property was at the northerly right-of-way line of vacated Oak Street and the rear property line of plaintiffs' property was at the centerline of vacated Oak Street. Thus, according to Hodgen, there was a gap area or disputed area about 25 feet wide that was not covered by either property's deed, although plaintiffs were occupying and maintaining the gap area and plaintiffs and their predecessor in title had paid the property taxes on that area. The gap area ran from the centerline of vacated Oak Street (the rear boundary line of plaintiffs' property) to the northerly right-of-way line of vacated Oak Street (the abutting property line of the Polk-a-Dot property). Gentile had not had the deed for the Polk-a-Dot property when he had prepared his survey.

¶ 6 Plaintiffs and defendant were unable to resolve their dispute, and in May 2012, plaintiffs filed the instant *mandamus* action against defendant, seeking to have the trial court order defendant to initiate separate eminent domain proceedings for the area of additional taking. In August 2015, the case proceeded to a bench trial, which took multiple days to complete. During the course of the trial, the parties presented the testimony of several witnesses and numerous exhibits were admitted into evidence, including the deeds for the two parcels, Gentile's survey, Hodgen's plat of highways, some of the prior plats, and defendant's procedure manual, among other things. In addition to establishing the information set forth above, the evidence presented at the trial established that Gentile, Hodgen, some of the workers involved in the construction project, and certain others all observed a concrete right-of-way marker in or near the area of additional taking where the construction work was performed (the construction work was performed between the right-of-way marker and the pavement of Route 53). The right of way was shown on both Gentile's survey and Hodgen's plat, although the actual marker had disappeared from the location prior to the trial.

¶ 7 As could be expected, the main thrust of plaintiffs' case was the testimony and survey of Gentile. Gentile testified in great detail as to the methods he had used in completing the survey, the conclusions he had reached, and the reasons for those conclusions. In sum, Gentile opined that his survey correctly showed the rear property line of plaintiffs' property and that plaintiffs owned the whole property, including the disputed area and the area of

additional taking. Gentile acknowledged, however, that he did not have the deed to the Polk-a-Dot property when he completed his survey and stated that when he learned there was a possible dispute over the rear boundary line of the property, he contacted the title company to ask if they would revise the legal description of the property to eliminate the references to the centerline of vacated Oak Street (to essentially comply with the amount of property that plaintiffs were actually occupying). A title company employee confirmed that plaintiffs' attorney had made a similar call or e-mail to the title company to request that the legal description be revised. Unbeknownst to Gentile, the title company refused that request. Gentile also acknowledged during his testimony that his survey showed a right of way for Route 53 in or near the area of additional taking.

¶ 8     The thrust of defendant's case, on the other hand, was the testimony of Hodgen and the plat of highways he had prepared. Like Gentile, Hodgen testified at length as to the methods he had used in completing his plat of highways, the conclusions he had reached, and the reasons for those conclusions. In short, Hodgen opined that his plat of highways correctly showed the rear property line of plaintiffs' property, that the pertinent deed did not include the disputed area or the area of additional taking, that Gentile's survey was incorrect, and that there was a right of way for Route 53 in or near the area of additional taking.

¶ 9     After the evidence in the case had been concluded, the parties submitted written closing arguments, and the trial court took the case under advisement. In August 2016, the trial court issued its written ruling finding for defendant and rejecting plaintiffs' claim for *mandamus* relief. In reaching that decision, the trial court found that Hodgen's methodology was more reliable and accurate than Gentile's and concluded, therefore, that plaintiffs had not established a clear right to *mandamus* relief because a substantial issue existed with regard to plaintiffs' ownership of the disputed area (and, presumably, the area of additional taking). The trial court also found that the record was clear that the area of additional taking was within defendant's preexisting right of way. As part of its ruling, the trial court awarded defendant its "[c]osts of suit."

¶ 10     Following the ruling, defendant filed a posttrial motion to set the amount of costs awarded and to impose Rule 137 sanctions against plaintiffs for filing a frivolous *mandamus* action and for bringing the *mandamus* action for an improper purpose. After a hearing, the trial court denied defendant's request to set the amount of costs at over $11,000 and, instead, set the amount of costs at just over $200. The trial court also denied defendant's request for sanctions. Both sides appealed.

¶ 11                                                           ANALYSIS
¶ 12                          I. Denial of Plaintiffs' Claim for *Mandamus* Relief
¶ 13     On appeal, plaintiffs argue that the trial court erred after a bench trial in ruling for defendant on plaintiffs' complaint for *mandamus* relief. Plaintiffs assert that the trial court's ruling was based upon an incorrect finding that plaintiffs had failed to establish a clear right to *mandamus* relief, a finding that plaintiffs contend was against the manifest weight of the evidence. In support of their position on this issue, plaintiffs maintain that (1) the trial court, in making its decision, applied the wrong legal standard for a case such as this—a boundary-line dispute where one of the parties was claiming an ambiguity in the legal description of the property; (2) in this type of case, the intent of the parties to the underlying conveyance controls and the trial court's role was to ascertain, and give effect to, that intent;

(3) because the deed (or deeds) in this case was not ambiguous, the trial court should have ascertained the intent of the parties solely from the deed and should have found based upon the deed that plaintiffs owned both the disputed area and the area of additional taking and that plaintiffs had a clear right to *mandamus* relief; (4) even if the trial court implicitly found that the deed was ambiguous, it should have determined the intent of the parties from the legal description as a whole, the extrinsic evidence, and the facts and circumstances of the conveyance and found based upon the manifest weight of that evidence that plaintiffs owned both the disputed area and the area of additional taking and that plaintiffs had a clear right to *mandamus* relief; and (5) many of the trial court's material conclusions, especially those related to the trial court's assessment of Gentile's and Hodgen's credibility, were either not supported by the record or were contradicted by the record. For all of the reasons stated, plaintiffs ask that we reverse the trial court's bench-trial ruling and order the trial court to issue an order of *mandamus* requiring defendant to initiate eminent domain proceedings as to the area of additional taking.

¶ 14    Defendant argues that the trial court's bench-trial ruling was proper and should be upheld. Defendant asserts that the trial court's finding—that plaintiffs had failed to establish a clear right to *mandamus* relief—was not against the manifest weight of the evidence. In support of that assertion, defendant contends that (1) plaintiffs' argument is contrary to the law and not supported by the evidence; (2) by acknowledging that an inherent inconsistency exists in the legal description of the property and by arguing parole evidence is necessary to resolve that inconsistency, plaintiffs have admitted they do not have clear ownership of the area of additional taking; (3) plaintiffs are essentially trying to quiet title to the rear boundary line of their property, which is not proper in a *mandamus* action, especially when the neighboring landowner is not involved; (4) the trial court correctly found that Hodgen's testimony was more credible and reliable that Gentile's and correctly relied on Hodgen's testimony in determining that plaintiffs did not own the area of additional taking and did not have a clear right to *mandamus* relief; and (5) the trial court correctly found that the work complained of in this case was performed in defendant's own right of way, which negated plaintiffs' claim for *mandamus* relief. For all the reasons set forth, defendant asks that we affirm the trial court's bench-trial ruling in defendant's favor on plaintiffs' *mandamus* complaint.

¶ 15    *Mandamus* relief is an extraordinary remedy that is used to compel a public officer or body to perform a nondiscretionary official duty. *McFatridge v. Madigan*, 2013 IL 113676, ¶ 17. In order to obtain *mandamus* relief, the plaintiff must establish three elements: (1) that the plaintiff has a clear right to the relief requested, (2) that the public officer has a clear duty to act, and (3) that the public officer has clear authority to comply with an order granting *mandamus* relief. *Id.* As the elements indicate, *mandamus* relief may not be granted to direct the manner in which a discretionary act is performed, even if that act was performed in an erroneous manner. *Turner-El v. West*, 349 Ill. App. 3d 475, 479-80 (2004). In addition, and pertinent to the context of the present case, a complaint for *mandamus* relief is an appropriate mechanism to use to try to compel the Illinois Department of Transportation to file an eminent domain action. See *Rosenthal v. City of Crystal Lake*, 171 Ill. App. 3d 428, 437 (1988). A trial court's ruling on a complaint for *mandamus* relief will not be reversed on appeal unless it is against the manifest weight of the evidence. *1350 Lake Shore Associates v. Randall*, 401 Ill. App. 3d 96, 102 (2010). A finding is against the manifest weight of the

evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Id.* To the extent, however, that we must determine whether the trial court applied the correct legal standard in making its decision, that question is one of law, which is subject to *de novo* review on appeal. See *id.*

¶ 16 In the present case, contrary to plaintiffs' assertion, we find no indication that the trial court applied the wrong legal standard. Rather, plaintiffs confuse this action with an action against the adjacent property owner to establish the rear boundary line of the property. In this case, a *mandamus* action, plaintiffs had to show, among other things, that they had a clear right to *mandamus* relief. See *McFatridge*, 2013 IL 113676, ¶ 17. As the trial court found, plaintiffs failed in that burden. The evidence presented at the bench trial established that plaintiffs' ownership of the disputed area and the area of additional taking was not clear. Furthermore, there was ample evidence presented to suggest that the work in question was confined to the area of defendant's preexisting right of way. We conclude, therefore, that the trial court's determination on the *mandamus* complaint was not against the manifest weight of the evidence and must be affirmed. See *1350 Lake Shore Associates*, 401 Ill. App. 3d at 102.

¶ 17 II. Denial of Defendant's Request for Illinois Supreme
Court Rule 137 Sanctions

¶ 18 As its first point of contention on cross-appeal, defendant argues that the trial court erred in denying defendant's request for Illinois Supreme Court Rule 137 sanctions against plaintiffs. Defendant asserts that sanctions were warranted because the record shows that plaintiffs were well aware before this *mandamus* action was filed, or at the very least, during the course of this *mandamus* action, that they could not show ownership of the disputed area and did not have a clear right to *mandamus* relief. The record also shows, according to defendant, that plaintiffs brought this *mandamus* action for an improper purpose—to use as leverage against, and to harass, defendant. Defendant asserts further that the trial court's denial of defendant's sanction request was inconsistent with, and contrary to, the findings that the trial court made in its bench-trial ruling. For the reasons stated, defendant asks us to reverse the trial court's ruling on defendant's sanction request and to award defendant the amount of sanctions that it requested or, in the alternative, to remand this case for the trial court to determine the appropriate amount of sanctions to impose.

¶ 19 Plaintiffs argue that the trial court's sanction ruling was proper and should be upheld. Plaintiffs assert that defendant's sanction motion was based on untrue assertions that were not supported by the record. Plaintiffs maintain, therefore, that the trial court's denial of defendant's request for Rule 137 sanctions should be affirmed.

¶ 20 Illinois Supreme Court Rule 137's purpose is to prevent the filing of frivolous and false lawsuits. *Peterson v. Randhava*, 313 Ill. App. 3d 1, 7 (2000). Rule 137 authorizes a court to impose sanctions against a party or attorney who files a motion or pleading that does not have a well-grounded factual basis; that is not supported by existing law; that lacks a good-faith basis for a modification, reversal, or extension of the law; or that is brought for an improper purpose. Ill. S. Ct. R. 137 (eff. July 1, 2013); *Peterson*, 313 Ill. App. 3d at 6-7. A party who requests sanctions bears the burden of proving that sanctions are warranted. See *Carus Chemical Co. v. Calciquest, Inc.*, 341 Ill. App. 3d 897, 901 (2003). A trial court's ruling on a request for Rule 137 sanctions will generally not be reversed on appeal absent an

abuse of discretion. *Id.* The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 21    Having reviewed the record in the present case, we find that the trial court did not commit an abuse of discretion by denying defendant's request for Rule 137 sanctions against plaintiffs. Contrary to what defendant suggests, the trial court did not find as part of its bench-trial ruling that plaintiffs' case was frivolous or that it was brought for an improper purpose. Defendant has attempted to broaden the trial court's findings to justify an award of sanctions. This was a difficult case with an unusual set of facts, and we cannot say that, under the present circumstances, the trial court's ruling on sanctions was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum*, 235 Ill. 2d at 36; *Leona W.*, 228 Ill. 2d at 460. We, therefore, reject defendant's argument on this issue.

¶ 22                        III. Denial of the Amount of Costs Requested by Defendant

¶ 23    As its final contention on cross-appeal, defendant argues that the trial court erred in the amount of costs it awarded defendant. Defendant asserts that the trial court misinterpreted the definition of costs as provided for in section 14-105 of the *mandamus* statute (735 ILCS 5/14-105 (West 2014)) and should have interpreted that term in a much broader manner to include all costs actually incurred, consistent with the way the term is interpreted in inverse condemnation proceedings (see 735 ILCS 30/10-5-65 (West 2014)) and in proceedings in federal court. Defendant asks, therefore, that we reverse the trial court's order on costs and award the amount of costs that defendant requested or, in the alternative, that we remand this case for the trial court to determine the appropriate amount of costs to award.

¶ 24    Plaintiffs argue that the trial court's ruling on the amount of costs was proper and should be upheld. Plaintiffs assert that the trial court correctly interpreted the term, "costs," in the *mandamus* statute in a narrow manner as was consistent with the interpretation that is given to the term under section 5-109 of the Code of Civil Procedure (Code) (735 ILCS 5/5-109 (West 2014)). Plaintiffs ask, therefore, that we affirm the trial court's order as to the amount of costs awarded to defendant.

¶ 25    Statutes allowing for the recovery of costs are in derogation of common law and must be narrowly construed. *Vicencio v. Lincoln-Way Builders, Inc.*, 204 Ill. 2d 295, 300 (2003). A party recovering costs under a statute or supreme court rule, therefore, may only recover those costs that the statute or rule specifically allows. See *id.*; *Boehm v. Ramey*, 329 Ill. App. 3d 357, 366 (2002). A trial court's award of costs in a civil case will generally not be reversed on appeal absent an abuse of discretion. *Boehm*, 329 Ill. App. 3d at 366. The resolution of this particular issue, however, turns on an interpretation of the costs provision of the *mandamus* statute. The interpretation of a statute is subject to *de novo* review on appeal. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 50.

¶ 26    When interpreting a statute, we must be mindful of the rules of statutory construction. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Id.* ¶ 56. The most reliable indicator of that intent is the language of the statute

itself. *Id.* In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute. *Blum*, 235 Ill. 2d at 29; 5 ILCS 70/1.01 (West 2014) (in construing a statute, "[a]ll general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out"). If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *Gaffney*, 2012 IL 110012, ¶ 56. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Id.*

¶ 27    As the parties' arguments indicate, the relevant statutes on this issue are section 14-105 of the *mandamus* statute, section 5-109 of the Code, and section 10-5-65 of the Eminent Domain Act. Those statutes provide as follows:

"§ 14-105. Judgment—Costs. If judgment is entered in favor of the plaintiff, the plaintiff shall recover damages and costs. If judgment is entered in favor of the defendant, the defendant shall recover costs." 735 ILCS 5/14-105 (West 2014).

"§ 5-109. Defendant to recover costs. If any person sues in any court of this state, in any action, wherein the plaintiff may have costs in case judgment is entered in favor of the plaintiff and the action is voluntarily dismissed by the plaintiff or is dismissed for want of prosecution or judgment is entered against the plaintiff, then judgment shall be entered in favor of defendant to recover defendant's costs against the plaintiff (except against executors or administrators prosecuting in the right of their testator or intestate), to be taxed, and the costs shall be recovered of the plaintiff, by like process as the plaintiff may have had against the defendant, in case judgment had been entered for such plaintiff." 735 ILCS 5/5-109 (West 2014).

"§ 10-5-65. Reimbursement; inverse condemnation. When the condemning authority is required by a court to initiate condemnation proceedings for the actual physical taking of real property, the court rendering judgment for the property owner and awarding just compensation for the taking shall determine and award or allow to the property owner, as part of that judgment or award, further sums as will, in the opinion of the court, reimburse the property owner for the owner's reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees actually incurred by the property owner in those proceedings." 735 ILCS 30/10-5-65 (West 2014).

¶ 28    When we compare the language of all three statutes, it becomes immediately apparent that the language of section 10-5-65 of the Eminent Domain Act was drafted to apply much more broadly than the other two statutes, as section 10-5-65 allows for the recovery of "reasonable costs, disbursements, and expenses" and specifies some of the types of items that may be recovered. *Id.* Sections 14-105 and 5-109, on the other hand, which are both part of the Code of Civil Procedure, were drafted much more narrowly and allow only for the recovery of "costs" (735 ILCS 5/5-109, 14-105 (West 2014)), not for the recovery of "costs, disbursements, and expenses" (735 ILCS 30/10-5-65 (West 2014)). In addition, as the case law indicates, costs statutes must be narrowly construed. See *Vicencio*, 204 Ill. 2d at 300. Applying a narrow construction in the present case, we find that the trial court correctly awarded defendant only its filing fee and summons costs. See *id.* A broader application of the

*mandamus* statute's costs provision must come from the legislature and not from the courts. See *Gaffney*, 2012 IL 110012, ¶ 56 (a court will not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent).

¶ 29                                               CONCLUSION

¶ 30          For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 31          Affirmed.